Grady *vs.* The State of Georgia.

No. 35.—THOMAS GRADY, plaintiff in error, *vs.* THE STATE OF GEORGIA, defendant in error.

[1.] The *attempt* to procure a slave to commit a *crime* or *misdemeanor*, under the amendatory Act of 22d February, 1850, means an offence which, if committed, would constitute a crime or misdemeanor in a *free white person.*

[2.] Negro testimony is inadmissible against a free white person. It is competent, however, to state that *certain acts were done*, in consequence of information received from a negro.

[3.] It is not only the privilege of the Court, but its solemn duty, to interrupt counsel, when misstating the testimony to the Jury.

[4.] Whether or not the *venue* be properly laid in a bill of indictment, when the facts are not disputed, is a question of law for the Court.

[5.] When a party is convicted upon a capital charge, it is proper to ask if he has any thing to say why judgment of death should not be pronounced on him. But in minor felonies, the omission of this ceremony, will not be a sufficient ground for reversing the judgment ; provided it appears that the prisoner and his counsel were both in Court, when the sentence was pronounced, and urged nothing in arrest of judgment, or in mitigation of defendant's guilt.

Indictment, in Troup Superior Court. Tried before Judge HILL, November adjourned Term, 1851.

At the November adjourned Term, 1851, of Troup Superior Court, Thomas Grady was placed upon trial, on an indictment for "an attempt to procure a slave to commit a crime."

The facts, as disclosed by the evidence, were these : On the night of the 12th of July, 1851, in the County of Troup, the defendant was heard counselling and advising a negro slave, named James, the property of Robert O. Moreland, of Meriwether County, to induce and carry away to some free State, two negro slaves, to wit : " Fed and Adam," the property of said Moreland.

On the trial, counsel for defendant moved to quash the indictment, on the ground that the offence charged in the bill of indictment was not a crime, under the Statute.

Which motion the Court overruled, and counsel for defendant excepted.

In the progress of the trial, Robert O. Moreland was introduced on the part of the State, and testified to the sayings of the negro boy " Jim."

To which no objection was made by counsel for defendant, at the time, but the same was taken as a ground in this bill of exceptions, and the admission of the evidence assigned as error.

The evidence was closed, and while counsel for the defendant was commenting upon the same, before the Jury, the Court interrupted him and required him, " to read on further, and he would see that the witness did not say what he was attempting to make it appear that the witness did say, from that portion of the testimony counsel had read," *which fact counsel, on reading through the testimony, admitted,* but excepted to the conduct of the Court in interrupting him.

Counsel for defendant requested the Court to charge the Jury, " that if the act to be performed by the boy Jim, was to be performed in Meriwether or any other County outside of Troup County, that they were bound to acquit the prisoner on the indictment."

Which charge the Court refused to give, but did charge the Jury " that the ' venue' was properly laid in Troup County."

To which refusal and charge, counsel for defendant excepted.

The Jury found the defendant guilty, and the Court sentenced him to four years' imprisonment in the penitentiary, without calling on the defendant, (he and his counsel both being present) to know " if he had any thing to say why sentence of the law should not be pronounced upon him."

And counsel for defendant excepted, and upon these several exceptions assigned error.

JOHN L. STEPHENS, for plaintiff in error.

SOL. GENERAL, for defendant in error.

*By the Court.*—LUMPKIN, J. delivering the opinion.

[1.] The first error complained of is, the refusal by the Court,

to dismiss the indictment, on the ground that it charged no offence.

The Act of 1850 declares, " that if any free white person shall attempt to procure a slave to commit a crime, by counsel, persuasion, bribery, force or other means, he shall be presented for such attempt, and if found guilty, shall incur the same punishment as if such free white person had attempted to commit the same crime, which he attempted to procure the slave to commit." *New Digest,* 780, 781.

The offence charged in the indictment is, "that Thomas Grady, the defendant, did attempt, by counsel and persuasion, to procure a negro man slave, by the name of Jim, the property of Robert O. Moreland, feloniously to take, steal and carry away, two negroes. Fed and Adam, the property of said Moreland," &c. And inasmuch as it is no crime, for one slave to steal another, it is insisted, that to procure it to be done, by a white man, is no offence, under the Statute.    But we apprehend, that the intention of the Act, is not to make punishable attempts to perpetrate acts, which if consummated, would be a crime in a *slave,* but a crime in a *freeman.*

The design of the Legislature in the passage of this law, and the previous Act of 1838, of which it is amendatory, was to make the white man responsible directly, for crimes committed or attempted, through the agency of negroes, and to substitute the principal in the place of the subaltern.    The proper inquiry therefore is, not whether, if the attempt had succeeded, it would have constituted an offence by the slave, but whether it would have been an offence, in the free white person, it having been done by a subordinate, through his counsel and procurement.

The very language of the law, is a key to unlock its meaning. Its speaks of an attempt to procure a slave to commit a *crime;* but if the stealing of negroes, is not a crime by a slave, but is by a white man, then the Statute, *ex vi termini,* refers to such acts only as are by law, criminal in white men.

Moreover, the construction contended for, would present this striking anomaly.    An attempt to commit a rape by a slave on a free white female, is punished with death.  *New Digest,* 987.

The same offence by a free white man, is punished by imprisonment at labor in the penitentiary, for a term not less than one year, nor longer than five years. *New Digest*, 789. And yet the Act under consideration provides, that if the accused be found guilty, he shall incur the same punishment as if the free white person had attempted to commit the crime, which he attempted to procure the slave to commit. If the interpretation given to the Statute by the prisoner's counsel be correct, the offence of attempting to procure a slave to commit a rape on a free white female, would be capitally punished, such being the penalty annexed to the crime, if committed by a slave. Whereas the Legislature has expressly enacted that this offence, by a free white citizen, shall be punished only by imprisonment for a limited period at labor in the penitentiary.

Our conclusion is, that the crimes or misdemeanors spoken of in the Act of 1850, are such as may be committed only by a free white citizen.

[2.] The next error complained of, is in permitting the sayings of the negro Jim, to Robert O. Moreland, to go to the Jury in evidence. The witness testified that the negro told him that he was to meet a white man, at a certain place that night, without mentioning any name, and it seems from a previous portion of the testimony, that it was this information which induced the prosecutor, in company with others, to waylay the prisoner.

Having on two recent occasions, made known the views of the Court, upon this species of proof, namely, in *Berry vs. The State*, decided at Gainesville in October last, and *Whaley vs. The State*, decided at Columbus during the late January term, we deem it unnecessary to reiterate a third time opinions so deliberately and repeatedly expressed; especially as it appears from the record before us, that no objection was made to the testimony during the progress of the trial. The admission of illegal testimony will not sustain a writ of error to this Court, unless objected to, at the time of its introduction, or on the argument of the case. 9 *Geo. Rep.* 9. *Ib.* 121.

[3.] The third exception is, that counsel for the prisoner was interrupted by the Court, while commenting upon the evidence be-

Grady *vs.* The State of Georgia.

fore the Jury, and told to read the whole of the testimony through, and he would discover that he was misrepresenting the witness; and he admitted upon further examination, that such was the fact. If this be so, it was not only the privilege of the Court, but its solemn duty, not to suffer the proof to be perverted, either intentionally or through inadvertence.

[4.] The next assignment of errors is, that the Court charged the Jury, that the *venue* was properly laid in Troup County. This opinion was elicited by a request, made by the attorney of the defendant, that the Court would charge the Jury, that if the act to be performed by the boy Jim, was to be done in Meriwether or any other County out of Troup, that they were bound to acquit the prisoner. The Court, in response to this request, instructed the Jury, as before stated, that the *venue* was properly laid in Troup County; and so we think; there the conspirators met and the scheme was concocted. There it was agreed between the prisoner and Jim, that for twenty dollars, Jim was to induce the other two negroes to escape and accompany Grady to Boston or some free State. It was from Troup, that Jim was despatched to confer with the other two slaves, and to make all the preliminary arrangements; and they were to meet the plaintiff in error in Troup, preparatory to their final exode. It was from Troup, that the directions were communicated to them, "to get their master's money, and to cut the damned old rascal's throat, if they could not obtain it otherwise." And it was here the defendant waited and watched for the return of his messenger, from this embassy of love and good will to man!

[5.] The only remaining ground is, that the Court sentenced the accused, without calling on him to know whether he had any thing to say why judgment should not be awarded against him.

We believe the law to be, and such is the practice, in case the defendant be found guilty upon a *capital charge*, for the prisoner to be present, not only at the rendition of the verdict, but that immediately or at a convenient time soon after, he should be asked by the Court, if he has any thing to offer, why judgment should not be pronounced against him. And in some early

cases it was held, that if judgment be given on an indictment, without a demand of what the party had to say, it is erroneous. 3 *Mod.* 265.    8 *Ib.* 26.    12 *Ib.* 51, 95, 312.    1 *Ld. Ray.* 408. 1 *Shann.* 131.    1 *Sid.* 85.    *Co. Ent.* 358.    2 *Hale*, 217.    3 *Com. Dig.* 513.    2 *Hawk P. C.* 438.    And that even in clergiable offences, the ceremony was considered indispensably necessary, that the defendant should be asked by the Court or the Clerk, if he had anything to say why judgment of death should not be pronounced on him.    3 *Salk.* 358.    *Comb*, 144.

According to the modern practice, however, this omission in minor felonies, will not be material, provided the defendant has not been 'deprived of an opportunity of moving in arrest of judgment, or any other legal right, to which he is entitled.    Here, it is conceded on the record, that both the prisoner and his counsel were present in Court, when the judgment was pronounced; that nothing was urged against the legality of his conviction or in mitigation of his conduct.    Under these circumstances, we do not think, that the omission of this form, is a sufficient ground for the reversal of the judgment.

Seeing no error in the proceedings of the Court below, we direct the judgment to be affirmed.