## STEEL *v.* THE STATE.

1. It is not error for a trial court, before imposing sentence upon one convicted of a capital offense, to omit to ask the accused what he has to say as to why sentence should not be pronounced upon him. Especially is this so where it does not appear that the accused has suffered injury thereby.

2. Evidence which was known, or could have been known by the exercise of ordinary diligence, to the defendant before and at the time of the trial is not ground for new trial.

3. The verdict is supported by the evidence, and the court did not err in overruling the motion for new trial.

No. 1254. MAY 14, 1919.

Indictment for murder. Before Judge Thomas. Thomas superior court. November 30, 1918.

*B. B. Earle* and *Leb. Dekle,* for plaintiff in error.

*Clifford Walker, attorney-general, Clifford E. Hay, solicitor-general,* and *M. C. Bennet,* contra.

HILL, J. Tom Steel was indicted for the murder of James Anderson, and the jury trying him returned a verdict of guilty, without recommendation, and he was sentenced to be hanged. The

defendant made a motion for new trial upon various grounds, which was overruled, and he excepted.

1.	One ground of the motion for new trial complains that the court, before pronouncing sentence upon the defendant, did not ask him, or his counsel, whether he had anything to say as to why the sentence of the court should not be pronounced, this being a capital offense.	The cases of *Grady* v. *State*, 11 *Ga.* 253, *Sarah* v. *State*, 28 *Ga.* 576, and *Rawlins* v. *Mitchell*, 127 *Ga.* 24 (55 S. E. 958), are cited as authority to the effect that in capital cases, if judgment be rendered without asking what the defendant had to say why sentence should not be pronounced, the judgment was erroneous.	In the *Grady* case the defendant was not convicted of a capital offense, but of a misdemeanor on an indictment for "an attempt to procure a slave to commit a crime." It was held in that case that the failure to ask the question before sentence was not a sufficient cause for reversing the judgment.	It is true that in delivering the opinion of the court in that case Judge Lumpkin gave utterance to the following obiter remarks: "We believe the law to be, and such is the practice, in case the defendant be found guilty upon a *capital charge,* for the prisoner to be present, not only at the rendition of the verdict, but that immediately, or at a convenient time soon after, he should be asked by the court, if he has anything to offer, why judgment should not be pronounced against him.	And in some early cases it was held, that if judgment be given on an indictment without a demand of what the party had to say, it is erroneous.	3 Mod. 265; 8 Ib. 26; 12 Ib. 51, 95, 312; 1 Ld. Ray. 408; 1 Shann. 131; 1 Sid. 85; Co. Ent. 358; 2 Hale, 417; 3 Com. Dig. 513; 2 Hawk. P. C. 438.	And that even in clergiable offences the ceremony was considered indispensably necessary, that the defendant should be asked by the court, or the clerk, if he had anything to say why judgment of death should not be pronounced on him	3 Salk 358: Comb 144	According to the modern practice however this omission in minor felonies will not be material, provided the defendant has not been deprived of an opportunity of moving in arrest of judgment, or any other legal right to which he is entitled.	Here it is conceded on the record that both the prisoner and his counsel were present in court when the judgment was pronounced." The case of *Sarah* v. *State,* supra, was where a slave was indicted for administering poison,

which offense was punishable by death, unless the trial judge saw fit to inflict a milder punishment. *Rawlins* v. *Mitchell,* supra. In the *Sarah* case it was held that the omission of the court to ask the accused if she had anything to say as to why sentence should not be pronounced was not such an irregularity as to entitle the accused to a new trial. Judge Lumpkin, who delivered the opinion in this case, as well as in the *Grady* case, said: "The ancient practice was for the court to call on the prisoner, if he or she had anything to say why sentence should not be passed. It originated at a time when prisoners were not allowed the benefit of counsel, and when the court was counsel for the prisoner, so far as to see that he was deprived of no legal right. Besides, the benefit of clergy was also allowed; and at this stage it was claimed. This is expressly abolished by our Penal Code. Our Penal Code prescribes with some minuteness the formula to be observed in the trial of criminal cases. No allusion is made to this ancient ceremony. Prisoners represented by counsel, as they now are, lose no right by the omission. One of the reasons assigned in the books for the observance of the practice is, that a motion may be made in arrest of judgment. These motions are made daily, and always before the prisoner is called up to be sentenced. Here a new trial was moved for. In the order of pleading, this follows the motion in arrest of judgment, and therefore virtually overrules it. All the grounds against the judgment are taken in the motion for a new trial. If she had a pardon, or should even obtain one afterwards, it would be available even under the gallows. Had it been made to appear that the prisoner had lost any right by the failure of the court to observe this ceremony, relief would be extended." In the *Rawlins* case, supra, the case was decided on a failure of the record to disclose whether the inquiry was made; and it was held that the motion to set aside the judgment on that ground was without merit. The present record does not disclose that the defendant was deprived of any substantial right by the omission to ask the question. He was represented by able counsel who had been appointed so to do by the court under authority of the Civil Code, § 6361; and counsel were present aiding and assisting the accused at his trial, and presumably were there when sentence was pronounced upon him. They made a motion to set aside the judgment and also prepared and argued

the present motion for new trial. So far as the record discloses, no request was made to the court by counsel or the accused to be heard when sentence was pronounced. Had there been, the court, ever ready to hear from counsel, would doubtless have heard them. The accused being represented by counsel, the reason for the common-law rule, which denied them counsel, no longer existed. When the reason ceased, the practice itself should cease. What good could have come from the request when no injury has been alleged? See 8 R. C. L. §§ 235, 236; State v. Hoyt, 47 Conn. 518 (36 Am. R. 89, 94). If the defendant had been deprived of any substantial right by failure of the court to ask the question, or had the court refused to hear from the accused or his counsel on some meritorious objection to his passing sentence, another question might be raised. But that is not this case. On the contrary, a motion in arrest of judgment was made in the case. What more could the question, if asked, have accomplished? The law will not require a vain thing to be done, and will not remand a case where no error or injury has been shown.

2. A new trial is asked because of newly discovered evidence since the rendition of the verdict, not merely cumulative in its character, etc. The evidence related to the drunken condition of the defendant at or about the time of the homicide. The sheriff of the county made affidavit that he went from Thomasville to Boston after the homicide, to carry the defendant to Thomasville. The latter was locked in "the calaboose" when he arrived there, where he could not have obtained any whisky, but his condition indicated that he did not know what he was doing, and that he was then unable to distinguish between right and wrong. "He was still crazy drunk All of his actions indicated that he did not know right from wrong He remained in this irresponsible condition for several hours," etc. This was supported by affidavits as required. The defendant offered no evidence on the trial, but made a statement in which he sought to justify the cutting "in order to stop him [deceased], to keep him from hurting me. Of course I didn't aim to kill him at all." He made no reference to being drunk. In *Beck v. State*, 76 *Ga.* 452, this court held: "If the accused, who was arraigned for the murder of his wife, was drunk, and in consequence thereof did not know her or comprehend the nature of the act he committed, he would be responsible there-

for, and would be a person of sound memory and discretion within the meaning of the law. If the drunkenness produced a temporary frenzy, madness, or unsoundness of mind in the accused, he would not be excused or held irresponsible for the act done by him while laboring under such temporary insanity, madness, or unsoundness of mind thus produced, it being his own voluntary act. But if the mania, insanity, or unsoundness of mind, though produced by drunkenness, be permanent and fixed, so as to destroy all knowledge of right and wrong, then the person thus laboring under these infirmities would not be responsible." If the defendant was drunk at the time of the homicide, he certainly knew it at the time of the trial, unless of course the drunkenness produced "mania, insanity, or unsoundness of mind" which was "permanent and fixed." This is not contended. The above being true, we think the showing made does not entitle the defendant to a new trial on the ground of newly discovered evidence. By the use of proper diligence the evidence might have been procured.

3. None of the other grounds of the motion show cause for reversal, and the evidence was sufficient to support the verdict. We have carefully gone through the entire record, and find no cause to reverse the judgment of the trial court in overruling the motion for new trial.

*Judgment affirmed. All the Justices concur.*