Charles Mack McGRADY, Appellant,

v.

W. K. CUNNINGHAM, Jr., Superintendent of the Virginia State Penitentiary, Appellee.

No. 8369.

United States Court of Appeals
Fourth Circuit.

Argued Oct. 3, 1961.

Decided Nov. 10, 1961.

Perkins Wilson, Richmond, Va. (Court-assigned Counsel), for appellant.

Reno S. Harp, III, Asst. Atty. Gen., of Virginia (Frederick T. Gray, Atty. Gen., of Virginia, on brief), for appellee.

Before SOBELOFF, Chief Judge, BOREMAN, Circuit Judge, and MICHIE, District Judge.

MICHIE, District Judge.

This is an appeal from the refusal of the United States District Court for the Eastern District of Virginia to grant the appellant a plenary hearing upon his petition for a writ of habeas corpus. The appellant is a prisoner of the Commonwealth of Virginia in custody of the appellee, W. K. Cunningham, Jr., who is Superintendent of the Virginia State Penitentiary.

The appellant was convicted of first degree murder on May 27, 1948, by the Circuit Court of Montgomery County, Virginia, and sentenced to life imprisonment.

On September 25, 1959, the appellant filed his petition for a writ of habeas corpus in the Supreme Court of Appeals of Virginia. This petition was dismissed without a plenary hearing on January 13, 1960. On January 27, 1960, the Supreme Court of the United States denied a petition for a writ of certiorari to review the order of the Supreme Court of Appeals of Virginia. See 363 U.S. 848, 80 S.Ct. 1623, 4 L.Ed.2d 1730.

Then on October 26, 1960, the prisoner filed the petition above mentioned in the United States District Court for the Eastern District of Virginia and on January 23, 1961, the District Court dismissed the petition without a plenary hearing, thereafter denying a certificate of probable cause. This court granted such a certificate on March 28, 1961, with leave to prosecute this appeal in forma pauperis.

Two questions are presented. The first is stated in appellant's brief in two alternative forms one of which is as follows:

"When a state prisoner represented by counsel of his own choosing has been convicted of a capital crime after pleading, in effect, 'guilty as charged' to an indictment which specifies neither the degree of crime charged nor the punishments authorized, and the state trial court has inquired neither into the nature of the prisoner's plea nor into the prisoner's understanding of the consequences of his plea, may a federal court on petition for writ of habeas corpus inquire as to the validity of the prisoner's sentence when he has been sentenced as guilty of the highest degree of the crime charged?"

The second question may be stated as follows:

"When a state prisoner represented by counsel of his own choosing has pleaded guilty to an indictment charging a capital offense, does the failure of the judge to inquire of the accused before sentencing him whether he has anything to say why sentence should not be imposed upon him invalidate the sentence imposed?" [1]

I. Was the failure of the court to inquire of the prisoner whether he understood the nature of his plea of guilty and the punishment that might be meted out to him as a result thereof a fatal error?

The indictment was in the Virginia statutory form, § 19.1–166 of the Code, which does not distinguish between murder in the first degree and murder in the second degree. Even before the statute was enacted it had been held in Virginia in Commonwealth v. Miller, 1 Va. Cas. 310 (3 Va. 310), decided in 1812, that it was unnecessary for an indictment for murder in the first degree to charge specially facts that would show the offense to have been murder in the first degree.

Subsequent to the enactment of the statute the question was again raised in several cases and in Kibler v. Commonwealth, 94 Va. 804 at p. 809, (1897), Judge Keith said:

"It is the common law indictment for murder. It does not charge specially the ingredients of murder in the first degree as distinguished from murder in the second degree, and the contention is that such an indictment will not support a verdict of murder in the first degree. This question was presented to the General Court in the case of Miller v. Commonwealth, reported in 1 Va.Cas. at page 310, and that court unanimously decided 'that the indictment is not defective in not charging specially such facts as would show the offence to have been murder in the first degree.' To the same effect see Wicks v. Com., 2 Va.Cas. 387, and Livingston v. Com., 14 Gratt. [592] 596.

"In the case of Thompson v. Com., 20 Gratt. [724] 730, the court says: 'It is not necessary, in consequence of the statute defining the different degrees of murder, and subject-

1. In the original petition the appellant also stated that his conviction was obtained, in part at least, by the use of a statement "which had been coerced by the relator by Virginia state troopers and the Commonwealth Attorney for Montgomery County following relator's arrest." A similar statement was made in the prior petition to the Supreme Court of Appeals of Virginia but it was there stated that the petitioner did not seek to raise the issue of coercion in this proceeding, being content to rely on other issues. The reason for this somewhat enforced contentment is found in petitioner's traverse to the answer of the defendant superintendent from which it appears that this issue as to the validity of the confession had been raised in previous habeas corpus proceedings and decided against the petitioner, certiorari being denied by the Supreme Court of the United States (357 U.S. 902, 78 S.Ct. 1154, 2 L.Ed.2d 1154). This question therefore, though adverted to by counsel for the prisoner in his brief and argument, is not properly involved in this case.

**602**

ing them to different punishments, to alter the form of indictments for murder in any respect, nor to charge specially such facts as would show the offence to be murder in the first degree.'

"If, therefore, any proposition of law can be considered as settled by decision and no longer open to debate, this is one of them."

There have been a number of subsequent cases to the same effect. Hevener v. Com., 189 Va. 802, 54 S.E.2d 893; Hurd v. Com., 159 Va. 880, 165 S.E. 536; Maxwell v. Com., 167 Va. 490, 187 S.E. 506.

■ And it is well settled in Virginia that a plea of guilty to an indictment is a plea of guilty to the highest degree of the offense charged in the indictment. Hobson v. Youell, 177 Va. 906, 15 S.E.2d 76.

The appellant contends however that he did not in fact understand that he was pleading guilty to murder in the first degree and that his counsel, who had been retained by his father, advised him to plead guilty telling him, "Don't start anything when you go in there, because they are only going to try you for murder in the second degree." And it is also alleged that counsel further advised the prisoner that in pleading guilty to murder in the second degree he could be sentenced only to from five to twenty years in the state penitentiary.

The appellant thus alleges that he did not in fact understand the nature of his plea and its possible consequences and that a sufficient inquiry by the court would have disclosed that fact.

Counsel for the appellant has made an able argument to the effect that under these circumstances the defendant was denied his constitutional rights and is entitled to the writ of habeas corpus. However counsel apparently has not found a case so holding and neither has the court. Counsel cites many cases dealing with the right to counsel but this right is not in question here as the appellant was represented by counsel of his own choosing—or at least of his father's selection which amounts to the same thing.

■ Furthermore under § 19.1—192. of the Code of Virginia whenever a plea of guilty is entered in a felony case the court is required to try the case. Sentence cannot be imposed upon the plea alone. McGrady was so tried by the Circuit Court of Montgomery County and at the conclusion of the trial the court deferred imposing sentence until the following day, it may be assumed in order that the court might maturely consider what the sentence should be. The fact that the accused did not choose to take the witness stand and give evidence in his own behalf indicates only that his counsel thought that he would fare better if he did not take the stand. And quite possibly he did as under the indictment and his plea he might conceivably have been sentenced to death.

We hold therefore that under all the circumstances of this case the failure of the court to inquire directly of the defendant whether he understood the nature of his plea of guilty and the possible extent of the punishment that might be meted out to him does not invalidate the sentence and consequently does not entitle the appellant to a writ of habeas corpus. In so holding we do not necessarily hold that such lack of inquiry coupled with erroneous advice of counsel might not under other circumstances be fatal to the sentence, especially if full opportunity to show all the facts were not granted by giving the accused a formal trial by the court. Our ruling is strictly limited to the facts of this case.

■ II. Defendant's second point is that the failure of the court to inquire of him personally before sentencing him whether he himself (as distinguished from his counsel) had anything to say as to why he should not be sentenced invalidates the sentence.

The only two cases cited on this point are federal cases, Couch v. U. S., 98 U.S.App.D.C. 292, 235 F.2d 519, and Green v. U. S., 365 U.S. 301, 81 S.Ct.

653, 5 L.Ed.2d 670. Both of these cases arose under rule 32(a) F.R.Cr.P., 18 U.S. C.A., which provides, insofar as material, as follows:

"Before imposing sentence the court shall afford the defendant an opportunity to make a statement in his own behalf and to present any information in mitigation of punishment."

There is no similar rule applicable by statute or rule of court in Virginia and apparently it has never been suggested before that there is any such rule in Virginia.

The Couch case, supra, does state, 235 F.2d at p. 523, that:

"Despite the fact that in the United States persons accused of crimes could be defended by counsel, the majority of jurisdictions enforced the right of allocution, though restricting it to capital cases. * * *"

There follow the quotation citations from five states only.

But the Couch case is apparently in error if the quotation given above can be construed as implying that the majority of American jurisdictions require the practice to be followed today. In a note in 113 A.L.R. at p. 821 it is said:

"It was indispensably necessary at common law in capital cases that a defendant should be asked before sentence if he had anything to say why sentence of death should not be pronounced against him. 8 R.C. L. p. 235. But, as observed in State v. Hoyt (1880) 47 Conn. 518, 36 Am.Rep. 89 (a murder prosecution), there is a growing tendency among the courts in the United States to look on this inquiry as a mere formality, the omission of which will not always invalidate the judgment. The following decisions have held that a failure to ask this question of a person convicted of a capital offense, before sentence is imposed, does not necessitate a reversal or setting aside of the judgment: State v. Hoyt (Conn.) supra; Sarah v.

State (1859) 28 Ga. 576 (attempt to poison); Steel v. State (1919) 149 Ga. 134, 99 S.E. 305 (murder); State v. Cheney (1877–80) Man. Unrep.Cas. (La.) 394 (rape; but opportunity to move for new trial or in arrest of judgment had been given); Dutton v. State (1914) 123 Md. 373, 91 A. 417, Ann.Cas.1916C, 89 (assault with intent to rape); Duker v. State (1932) 162 Md. 546, 160 A. 279 (murder); Warner v. State (1894) 56 N.J.L. 686, 29 A. 505, 44 Am.St.Rep. 415; State v. Johnson (1872) 67 N.C. 55 (rape); Kinsler v. Territory (1873) 1 Wyo. 112 (murder; resentence by appellate court with proper formalities).

"The courts which take this position proceed on the theory that there is no longer any good reason for the observance of the common-law custom of making such an inquiry, which is known as the 'allocutus,' or 'allocution.'"

We conclude therefore that there is no merit in the appellant's contention on this point and we may further remark in passing that even under the federal rule failure to grant the right of allocution directly to the prisoner rather than to counsel for the prisoner would not entitle the prisoner to a new trial. The only effect would be to set aside the sentence and send the case back for resentencing after compliance with the rule. See Couch v. U. S., supra, and Green v. U. S., supra. And this is also the rule in the states that still require allocution. As said in 113 A.L.R. at p. 821:

"It is to be observed that none of the decisions set out herein has held that a failure to ask a convicted person whether he has anything to say before sentence is pronounced, alone, constitutes ground for a new trial or requires a reversal of the verdict. While many of the cases discussing the subject have referred to the failure to make inquiry as constituting or not constituting 'reversible error,' such reference goes only to the validity of the sentence or the

**604**

judgment pronounced by the court after verdict, to the end that the case may be returned to the trial court and judgment regularly pronounced with the requisite formalities. * * * "

The decision of the court below must therefore be affirmed.

Affirmed.