**L. P. KIBERT, Petitioner,**

**v.**

**A. E. SLAYTON, Jr., Superintendent of the Virginia State Penitentiary, Respondent.**

**Civ. A. No. 72–C–146–A.**

United States District Court,
W. D. Virginia.

March 19, 1973.

No appearance for petitioner.

Burnett Miller, III, Asst. Atty. Gen., Richmond, Va., for respondent.

## OPINION

TURK, District Judge.

Petitioner, Lloyd Kibert, was convicted of two counts of first degree murder in the Circuit Court of Lee County, Virginia, on June 4, 1959, and was sentenced to two concurrent life sentences. He did not directly appeal these convictions, but on April 16, 1968, he did petition the Virginia Supreme Court of Appeals for a writ of habeas corpus. On June 12, 1968, the Virginia Supreme Court of Appeals awarded the writ to petitioner, and ordered that petitioner be given a plenary hearing on his several claims. Such a hearing was held on December 20, 1968, in the Circuit Court of Lee County, and petitioner's several claims were rejected. Thereafter, a petition for a writ of error to the Virginia Supreme Court of Appeals was denied on December 2, 1970; on June 7, 1970, a pe-

tition to rehear this decision was also denied.

The pertinent facts from the opinion of the state courts and the transcript of the state habeas corpus hearing may be briefly summarized. Petitioner and his two brothers were arrested on April 26, 1959, for the murder of their aunt and uncle the previous day and were incarcerated in the county jail at Jonesville, Virginia. A few days after his incarceration petitioner and his brothers were visited in jail by Leonard Hays, publisher and reporter for the *Lee County Sun,* a local newspaper of general circulation. Mr. Hays, accompanied by the Sheriff of Lee County, interviewed the brothers about the murders and published pictures and statements admitting guilt in the local paper. Petitioner testified at his state habeas corpus hearing that the evening after his arrest he was interviewed by a person he thought to be the Commonwealth Attorney and by a number of police officers. This was prior to the time he had an attorney, and there was no evidence that he had been advised of his rights. After the interview, petitioner signed a confession without reading it. He testified that at the time of his arrest he had a second grade education and could read "very, very little." Nevertheless, the testimony indicated that the confession was rather freely given. He stated at the state hearing that after the murders he returned to the scene and admitted the shootings, and while in jail he again freely confessed although he was not advised of his right to remain silent or have an attorney.

Ten days after charges had been placed against petitioner, his family employed a local attorney, Mr. Williams, to represent the three brothers. The testimony below was in dispute as to how often counsel interviewed the brothers prior to the preliminary hearing with petitioner asserting that there was a single five minute interview and Mr. Williams stating that there were "quite a few" interviews.

On May 15, 1959, a preliminary hearing was held and the cases were certified to the grand jury. The grand jury indicted petitioner on June 2, 1959. These indictments stated that L. P. (Bill) Kibert did "unlawfully and feloniously kill and murder Mat Edd Kibert and Lavanna Kibert." Then, on June 4, 1959, the three brothers along with Mr. Williams and co-counsel appeared in Circuit Court to have the cases set for trial. Mr. Williams testified in the state hearing that he had no intention whatsoever of entering any plea at that time but was merely interested in setting the cases for trial and making a motion to have one of petitioner's brothers committed for a mental examination. While in court, Mr. Williams conferred with the Commonwealth Attorney, and a plea bargaining session ensued. The Commonwealth Attorney offered concurrent life sentences for petitioner and one of his brothers and 20 years for the other brother against whom the evidence was not as strong.[1] Petitioner testified that he wanted "to take whatever they offered (him)" in order to protect his brother and that it was his own idea to plead guilty. Mr. Williams advised against pleading guilty, but conceded to petitioner's wish to take what was offered.

The testimony below of Mr. Williams indicates that prior to the morning in which the brothers pleaded guilty he assumed that the case would be tried by a jury, and his preparations had been to that end. He stated that the primary reason for agreeing to the plea of guilty was the fact that there was an eight year old boy who had witnessed the murders and testified at the preliminary hearing that he could definitely identify petitioner's brothers and could identify petitioner "by his legs." Mr. Williams stated that petitioner's confession also

---

1. Petitioner's brother Jessie who was also given concurrent life sentences was granted a writ of habeas corpus by the Fourth Circuit Court of Appeals in 1967 on the ground that he had been incompetent to stand trial. Kibert v. Peyton, 383 F.2d 566 (4th Cir. 1967).

entered into the decision to allow him to plead guilty. As for the newspaper publicity, he stated that he was aware of it and had the case gone to trial, he might have asked for a change of venue. He testified that as far as he was concerned the confession was voluntary and "more or less cut the ground from under (him) as far as any defense was concerned."

The state habeas corpus proceeding also produced evidence relating to the search of the home of petitioner's parents and the seizure of certain weapons and ammunition that might have been used in the murders. The evidence was to the effect that police officers did come to the home of the parents without a warrant and did search and seize the weapons and ammunition. The parents testified that permission was not given. In the state habeas corpus proceeding Judge Cridlin did not consider the illegal search significant because the weapons were not used as evidence at the trial.

There was apparently no transcript made of the proceeding in which the brothers pleaded guilty and only the opinion of the trial judge along with the testimony at the state plenary hearing is available to determine the proceedings before the trial court. Petitioner stated at his state habeas corpus proceeding that his counsel pled him guilty, and co-counsel recommended two life sentences to run concurrently. This was accepted by the judge. He further testified that no evidence of guilt was introduced at that time. The opinion of the trial judge below states in part as follows:

"The defendant, after being fully advised of his rights and the consequences of his plea, by counsel, of his own choosing came before the court and announced that he desired to waive arraignment and enter a plea of guilty to murder of the first degree as charged in the indictment; thereupon, the court accepted said plea of guilty and being of the opinion that the accused fully understood the nature and effect of his plea, proceeded to hear and determine the case without the intervention of a jury as provided by law and having heard the evidence doth find the accused guilty of murder of the first degree, and upon the recommendation of the attorneys for the Commonwealth, and after mature consideration, ascertains his punishment to be life imprisonment in the penitentiary of this Commonwealth."

The petitioner has raised the following claims before this court in his petition for a writ of habeas corpus: that his confession and guilty plea were involuntary; that he was not advised of his right to remain silent or have an attorney; that pre-trial publicity made a fair trial impossible; that he was denied effective assistance of counsel; that evidence was illegally seized in violation of his constitutional rights; that the warrant was not read to him; that the charges were not read orally in open court; that he was insane at the time of his trial; that he was not allowed the right to appeal; and that he was convicted without the introduction of evidence of his guilt.

For purposes of dealing with petitioner's claims, it appears that there has been an adequate factual development below and no further hearing is necessary.

 Petitioner's contentions that his confession was involuntary was refuted by his own testimony in the state plenary hearing. His testimony also indicated that it was his own idea to plead guilty and that he was aware of the consequences. The fact that he was questioned before he had counsel did not make his statements inadmissible since the events in question occurred prior to Escobedo v. Illinois, 378 U.S. 478, 84 S. Ct. 1758, 12 L.Ed.2d 977 (1964) and Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) which are not retroactive in application. Johnson v. New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966). In any event, the confession was not used against petitioner.

■■ The testimony below by petitioner and his counsel clearly indicated that it was petitioner's idea to plead guilty and that his reasons for wanting to do so had nothing to do with the confession. But even if the confession did play a part in the guilty plea, on the facts of this case it would have to stand. *See* McMann v. Richardson, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970); Brady v. United States, 397 U. S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970). The contention that the pretrial publicity prevented a fair trial, is not supported, and petitioner's testimony indicating that he voluntarily pled guilty indicates that the publicity did not prejudice him. Similarly, the illegal search and seizure is not a viable issue in this case because no illegally seized evidence was introduced against him, and his guilty plea waived the claim.

■■ Nevertheless, this court does feel that there is merit in petitioner's claim that no evidence of his guilt of first degree murder was introduced at his trial. As a preliminary matter, this court must disagree with respondent's contention that this issue has not been presented to the state courts. A review of the transcript of the state habeas corpus hearing shows that Judge Cridlin specifically questioned the fact that no evidence had been presented at petitioner's trial to raise the offense from second to first degree murder (Tr. 71–72). For some reason the issue was not argued by counsel and Judge Cridlin did not incorporate it into his opinion. The issue was also presented in the petition to the Virginia Supreme Court of Appeals asking that Court to reconsider its decision of December 2, 1970, denying a writ of error. The state courts have had ample opportunity to decide this issue but have apparently not done so because petitioner's various counsel have not argued the point. The rule is well established and now codified in statute that state courts must have the first opportunity in correcting defects in their proceedings. 28 U.S.C. § 2254. That the claim could have been resolved in the state courts is apparent from reading the record, and no purpose would be served by this court avoiding the issue. *See,* Brown v. Allen, 344 U.S. 443, 448, 73 S.Ct. 397, 97 L.Ed. 469 (1953). It is highly unlikely that the state courts would reconsider this claim since it could have been raised in the previous petition for habeas corpus. The Virginia habeas corpus statute provides in part that "No writ shall be granted on the basis of any allegation the facts of which petitioner had knowledge at the time of filing any previous petition." § 8–596(b)(2) (1950) (CODE OF VA., as amended. In Fay v. Noia, 372 U.S. 391, 399, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963) the Supreme Court held that the exhaustion requirement refers only to a failure to exhaust state remedies still open to the applicant at the time he files his application in federal court. Thus although the state courts have not decided this issue, they have had the opportunity to do so, and it is unlikely that petitioner could again present it in state court. On these facts, it is proper for this court to reach the merits of this claim.

■■ The law of Virginia was and apparently still is that murder is presumed to be in the second degree and in the absence of evidence continues to be in the second degree. The Commonwealth has the burden of elevating the crime to murder in the first degree by showing malice aforethought and intent to kill, and a defendant may introduce evidence in an attempt to reduce the charge to manslaughter or excusable homicide. *E. g.,* Watson v. Commonwealth, 85 Va. 867, 9 S.E. 418 (1889); Williams v. Commonwealth, 128 Va. 698, 104 S.E. 853 (1920); Smith v. Commonwealth, 192 Va. 186, 64 S.E.2d 761 (1951); Painter v. Commonwealth, 210 Va. 360, 171 S.E.2d 166 (1969). The punishment for the varying degrees of homicide in Virginia varies considerably.[2]

2. CODE OF VA. (1950) as amended:
§ 18.1–22. First degree; how punished.
—Murder of the first degree shall be punished with death, or by confinement in the penitentiary for life, or for any term not less than twenty years.

■■■ It is also the law in Virginia that a plea of guilty is a conviction or the equivalent of a conviction of the offense to which it is directed, and the effect of the guilty plea is to authorize the imposition of the punishment prescribed by law on a verdict of guilty of the offense admitted. Crutchfield v. Commonwealth, 187 Va. 291, 46 S.E.2d 340 (1948). But under § 19.1–192 of the Code of Virginia when a plea of guilty is entered in a felony case the court is required to "hear and determine the case without the intervention of a jury." This has been held to require that the court "try" the case and not impose sentence on the plea alone. McGrady v. Cunningham, 296 F.2d 600 (4th Cir. 1961),[3] cert. denied, 369 U.S. 855, 82 S.Ct. 944, 8 L.Ed.2d 14 (1962).

■■■ In the case before this court the indictment charged that petitioner "did unlawfully and feloniously kill and murder" his aunt and uncle. Under Virginia law it presumptively charged second degree murder. The question then becomes whether or not evidence was in fact heard by the trial court to raise the offense to first degree murder. The opinion of the trial judge made reference to evidence having been heard, and this court will give great respect and proper deference to the records of a state court. But a careful review of all the records below casts considerable doubt on whether the trial judge did in fact determine whether the elements necessary for a conviction of first degree murder had been made out.[4]

In the first place, it is relevant that the trial judge also stated in his order that murder in the first degree was charged in the indictment whereas this in fact was not the case nor should it have been under Virginia law. This discrepancy casts doubt on the statement in the order of the trial judge that evidence was presented at the trial other than the guilty plea, and this doubt is further reinforced by the standarized form and "boilerplate" quality of the order considered as a whole.

Second, petitioner testified at the plenary hearing below that no evidence was produced at his trial. In addition, he stated that his attorney told him "not to say anything, he would do all the talking." The opinion of the trial judge corroborates this testimony in that it states that petitioner did not say any-

---

§ 18.1–23. Second degree; how punished. —Murder of the second degree shall be punished by confinement in the penitentiary not less than five nor more than twenty years.

§ 18.1–24. Voluntary manslaughter; how punished.—Voluntary manslaughter shall be punished by confinement in the penitentiary not less than one nor more than five years.

§ 18.1–25. Involuntary manslaughter; how punished.—Involuntary manslaughter shall be punished by confinement in the penitentiary not less than one nor more than five years, or, in the discretion of the jury or the court trying the case without a jury, by fine of not exceeding one thousand dollars, or confinement in jail not exceeding one year, or both.

3. The case of Hobson v. Youell, 177 Va. 906, 15 S.E.2d 76 (1941) involved a plea of guilty to murder for which defendant was sentenced for first degree murder. The Virginia Supreme Court of Appeals rejected on habeas corpus the claim that there had been no evidence introduced to support the conviction. The Court viewed the question as one of sufficiency of evidence and thus not to be considered on collateral attack. In addition the Court stated that the "indictment, the plea and the orders of the court clearly establish the fact that petitioner was legally charged with murder in the first degree." The case at bar is distinguishable in that petitioner did not plead guilty to first degree murder, and the issue is not sufficiency of the evidence but rather absolute lack of evidence.

4. In Townsend v. Sain, 372 U.S. 293, 316, 83 S.Ct. 745, 758, 9 L.Ed.2d 770 (1962) the Supreme Court stated: "This Court has consistently held that state factual determinations not fairly supported by the record cannot be conclusive of federal rights. . . . Where the fundamental liberties of the person are claimed to have been infringed, we carefully scrutinize the state-court record. . . . The duty of the Federal District Court on habeas is no less exacting." (citations omitted)

thing in his own behalf before sentence was passed. At the end of the state habeas corpus hearing Judge Cridlin questioned the fact that no evidence had been introduced to elevate the crime to first degree murder. The attorney for the Commonwealth did not dispute the fact that no evidence had been introduced but merely questioned whether the introduction of evidence was necessary with a plea of guilty (Tr. 71–72).

Third, testimony at the state plenary hearing by petitioner's counsel was to the effect that there had been no intention of trying defendants on the day in which the guilty pleas were entered and that the purpose for being in court was merely to set the cases for trial. It is reasonable to assume that had the court wanted to receive evidence of first degree murder the state would not have been prepared to introduce it.

Finally, the opinion of Judge Cridlin rejecting petitioner's claims for habeas corpus relief further supports the conclusion that nothing more than a guilty plea was introduced below. One of the claims made by petitioner in the state hearing was that his confession was not voluntary. Judge Cridlin rejected this because the confession was not used against him. Similarly, the claim that weapons had been seized from the home of petitioner's parents pursuant to an unlawful search and seizure was rejected because the seized evidence was never used against petitioner.

From the foregoing, the obvious conclusion is that petitioner's conviction for first degree murder was supported solely by his plea of guilty. Having found that petitioner pleaded guilty to the charge in the indictment and such charge under Virginia law being presumed to be second degree murder, the question remains whether this court can grant collateral relief in such circumstances. Respondent contends that petitioner's allegation merely attacks the sufficiency of the evidence; such a claim has been foregone by his voluntary plea of guilty; and in any event such a claim is not subject to collateral attack. In support of this contention respondent cites the case of Williams v. Peyton, 414 F.2d 776 (4th Cir. 1969). The *Williams* case correctly states the rule of collateral review in federal court.

"When the sufficiency of the evidence supporting a state conviction is challenged by way of federal habeas corpus, the sole constitutional question is whether the conviction rests upon any evidence at all. *Id.* at 777.

The facts of the *Williams* case make it easily distinguishable from the case at bar. Petitioner in that case had been convicted of burglary and claimed that there had been no evidentiary support for an essential element of the crime— intent to commit larceny. But there had been a trial before a judge in which various persons had testified including the petitioner. The Court of Appeals found that the trial judge could have rationally inferred the necessary element of specific intent.

The case before this court is unlike the *Williams* case in that the only evidence before the trial judge was petitioner's plea of guilty to murder. There was no evidence of intent to kill and malice aforethought which are required in Virginia to raise the crime of murder to murder in the first degree. Williams v. Commonwealth, 128 Va. 698, 104 S.E. 853 (1920). Although this court will not weigh the sufficiency of evidence, it will examine the conviction to see if it is so totally devoid of evidentiary support as to be a denial of due process of law. *See,* Johnson v. Florida, 391 U.S. 596, 88 S.Ct. 1713, 20 L.Ed.2d 838 (1968); Garner v. Louisiana, 368 U.S. 157, 82 S.Ct. 248, 7 L.Ed.2d 207 (1961); Thompson v. Louisville, 362 U.S. 199, 80 S.Ct. 624, 4 L.Ed.2d 654 (1960). See also, Cole v. Arkansas, 333 U.S. 196, 68 S.Ct. 514, 92 L.Ed. 644 (1948).

The case at bar is factually similar to Farrant v. Bennett, 249 F.Supp. 549 (S. D. Iowa 1966) in which a federal court granted habeas corpus relief to a petitioner who had been sentenced for first

degree murder without a hearing to determine the degree of his guilt.[5] The case at bar is even stronger than *Farrant* because in that case the trial judge delayed sentencing until after the trial of a co-defendant who had pleaded not guilty in order that he would know the factual situation of the murder. In the case at bar there is no indication of how the trial judge knew the facts.

It is perhaps likely that the trial judge was familiar with the facts of the case due to the attendant publicity in the local paper, but publicity is no substitute for constitutionally required standards of due process. It is also possible that petitioner's confession would have been sufficient to support his conviction of first degree murder, but as Judge Cridlin found below, the confession was not used. What appears from a review of the records is that a short-cut was taken around the statutory procedure for a conviction for first degree murder. There were three defendants and a number of weapons involved in the crime, and there was substantial publicity due to the nature and circumstances surrounding its commission. It is impossible to say whether the judge would have reached the result that all three brothers were guilty of first degree murder if evidence other than the guilty pleas were introduced. Evidence from the weapons as well as the confessions might easily have changed the result. Because of the failure to introduce any evidence to support the elements of first degree murder, petitioner was denied due process of law. The punishments for the various degrees of homicide in Virginia vary considerably, and the possibility of a different result being reached requires that this court grant relief to petitioner. Therefore, the petition for a writ of habeas corpus will be granted subject only to the right of the Commonwealth to retry petitioner within a reasonable time.

---

5. For other cases reaching similar results see the collection in 34 A.L.R.2d 919.