995 F.2d 964
 38 Fed. R. Evid. Serv. 1424
 UNITED STATES of America, Plaintiff-Appellee,
v.
James Theodore WICKS, also known as Theodore T. Wicks, also
known as Theodore Theron Wicks, also known as James Theodore
Watts, also known as James Theron Wicks, also known as Jimmy
Ray Bertrano, also known as James Paul Egdahl, also known as
James T. Wicks, also known as James Wicks, also known as
James Theron Watts, Defendant-Appellant.
 No. 92-6070.
 United States Court of Appeals,
Tenth Circuit.
 June 4, 1993.
 
 William P. Earley, Asst. Federal Public Defender, Oklahoma City, OK, for defendant-appellant.
 Leslie M. Kaestner, Asst. U.S. Atty. (Timothy D. Leonard, U.S. Atty., with her on the briefs), Oklahoma City, OK, for plaintiff-appellee.
 Before ANDERSON and EBEL, Circuit Judges, and LUNGSTRUM,* District Judge.
 STEPHEN H. ANDERSON, Circuit Judge.
 
 
 1
 Defendant James T. Wicks appeals his conviction, after a jury trial, on eight counts relating to drug trafficking, resulting in a total sentence of 387 months imprisonment. Wicks raises three issues on appeal: (1) whether the district court erred in denying his motion to suppress evidence; (2) whether the district court erred in overruling his objection to the admission of certain evidence on hearsay grounds; and (3) whether the district court erred in sentencing Wicks as an armed career criminal pursuant to 18 U.S.C. § 924(e)(1). We affirm.
 
 BACKGROUND
 
 2
 Wicks was convicted of the following offenses: (1) conspiracy to possess with intent to distribute and to distribute methamphetamine, in violation of 21 U.S.C. § 846; (2) interstate travel to promote unlawful activity in violation of 18 U.S.C. § 1952(a)(3); (3) distribution of methamphetamine in violation of 21 U.S.C. § 841(a)(1); (4) use of a telephone to facilitate a conspiracy in violation of 21 U.S.C. § 843(b); (5) possession with intent to distribute methamphetamine in violation of 21 U.S.C. § 841(a)(1); (6) possession of a firearm moved interstate after a felony conviction in violation of 18 U.S.C. § 922(g)(1); and (7) carrying a firearm in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1).
 
 
 3
 The charges against Wicks arose from an investigation of Wicks conducted by Drug Enforcement Administration ("DEA") agents in Oklahoma City. The DEA agents were assisted in their investigation by Darryl Skaggs, who was arrested on drug charges on August 7, 1991 and who agreed, after his arrest, to help the DEA investigate Wicks, who Skaggs said was a supplier of methamphetamine. Skaggs told DEA agents the following pertinent information about Wicks: he traveled back and forth between California and Oklahoma in an eight-day cycle, during which he would pick up drugs in California, distribute them during his journey from California to Oklahoma, and receive payment for the drugs on his return trip; he usually stayed in two adjoining rooms at the Drover's Inn while in Oklahoma City, from which he conducted his drug-related business; that, on one occasion, perhaps on "numerous" occasions, Wicks had carried a firearm.
 
 
 4
 The DEA agents then arranged for Skaggs to stay at a different motel--the Meridian Plaza--from which Skaggs placed several telephone calls to Wicks, from the afternoon of August 8th to the morning of August 9th. The calls were taped and monitored by the agents. One of the DEA agents, Agent Ricker, testified that the substance of the calls was that Wicks was waiting for Skaggs to pay him for methamphetamine previously supplied. The telephone conversations generally corroborated what Skaggs had told the DEA agents and also revealed that Wicks was trying to recruit Skaggs to obtain a chemical used in the manufacture of methamphetamine.
 
 
 5
 Agent Ricker further testified that the agents attempted on several occasions to get Wicks to come to the Meridian Plaza motel where Skaggs was staying. Wicks apparently did come to the motel on the morning of August 9th, but left "rather suddenly and abruptly." R.Vol. III at 9. Agent Ricker testified that a subsequent telephone conversation between Wicks and Skaggs revealed that Wicks was suspicious of and uncomfortable around the Meridian Plaza. The district court found that the "agents reasonably concluded that Mr. Wicks felt some anxiety about consummating a transaction at the Meridian Plaza, fearing that that was a setup." Id. at 67.
 
 
 6
 Finally, after further observation of Wicks' motel rooms, and after summoning more DEA agents to provide assistance, the agents concluded that there was sufficient probable cause to arrest Wicks.[1] They decided, however, not to procure an arrest or search warrant. The agents testified that they decided there was insufficient time to procure a search warrant because: in a previous monitored phone conversation Wicks had told Skaggs that his (Wicks') time in Oklahoma was about up; Wicks had been increasingly nervous, "he was certainly anxious and certainly would have destroyed the evidence," id. at 11; Wicks "appeared ... [to be] divorcing himself from Mr. Skaggs," id. at 31; and, based on their information that Wicks had carried a firearm on at least one prior occasion, the agents felt it would be safer for them and for the public if Wicks was apprehended in his motel room, and with a presumed check-out time of noon, and with Wicks' car parked in front of his motel rooms, they feared Wicks would be leaving the motel shortly.[2] Agent Ricker testified he did not believe that Wicks was aware that there were agents outside the Drover's Inn observing him. Id. at 11. Agent Schickedanz testified that no one checked with the motel office to see if in fact Wicks planned to leave that day.
 
 
 7
 The agents then called Wicks' motel room and confirmed that someone was inside. When an unidentified person answered the door and allowed the agents to enter the room, the agents arrested Wicks. Two of the agents left with Wicks and two remained behind to safeguard the motel rooms. The agents observed a white powder in plain view on a nightstand in one of the rooms. One of the agents testified that he suspected it was either methamphetamine or a cutting agent.
 
 
 8
 Agent McCullough then drafted an affidavit seeking a search warrant to search Wicks' motel rooms.[3] In doing so, he relied heavily on information provided by Agent Ricker, who had worked closely with Skaggs in the two-day investigation of Wicks, and on the taped and monitored telephone conversations between Skaggs and Wicks. The affidavit also specifically mentioned the white powder in plain view on the nightstand in the motel room.
 
 
 9
 The affidavit then stated that a search of the motel rooms "would result in the seizure of narcotics, documents and items which reflect drug trafficking or cultivation." Appellant's Brief, Attachment B at 7. The affidavit specified that those items would be "large amounts of United States currency ... books, records, receipts, notes, ledgers, and other papers relating to the transportation, ordering, sale and distribution of controlled substances ... contraband, proceeds of drug sales and/or records of drug transactions, drug sources, and drug customers ... safe deposit boxes ... caches of drugs, large amounts of currency, financial instruments, precious metals, jewelry ... addresses or telephone numbers in books or papers ... photographs ... paraphernalia ... includ[ing] syringes, bottles, scales, plastic bags, balloons, heat sealers, glassware, chemicals, mechanical stirrers, and/or heat sources[,] ... stolen weapons or goods." Id. at 2-4.
 
 
 10
 Agent McCullough testified that he did not have "specific information" that the individual items listed in the affidavit attached to the search warrant, with the exception of methamphetamine itself, would be in the motel rooms. R.Vol. III at 51-52. Rather, the agent testified that they were "items [he] would generally think might be present in a case such as this," id. at 52, "based upon [his] past experience, education and training ... as items that are commonly used or assist with the conducting of a drug business." Id. at 55.
 
 
 11
 After obtaining the search warrant, the agents searched the motel rooms and seized numerous pieces of incriminating evidence, including firearms and controlled substances. They also found two locked briefcases, which they opened, and in which they found documents, two guns, small quantities of controlled substances and sheets of paper containing formulae for making crack cocaine and methamphetamine and a list of precursor chemicals for methamphetamine.
 
 
 12
 Wicks filed a motion to suppress the evidence seized from his motel rooms. After holding an evidentiary hearing, the district court denied the motion.
 
 
 13
 At trial, Skaggs and two other individuals, Wesley Callison and Tony Nelson, testified against Wicks. Skaggs testified that he obtained methamphetamine from Wicks at the Drover's Inn. Over an objection that the sheets taken from the briefcases were inadmissible as hearsay, the court permitted them into evidence. They were identified as containing methamphetamine "recipes." Wicks was convicted on all counts.
 
 
 14
 The government thereafter filed a Notice of Eligibility for Imposition of Sentence Under the Enhanced Penalty Provision of 18 U.S.C. § 924(e)(1), on the grounds that Wicks was convicted of three counts of first degree robbery in California in 1963.
 
 
 15
 Wicks argues the district court erred in refusing to grant his motion to suppress evidence: (1) discovered in plain view by the DEA agents incident to an illegal arrest of Wicks in his motel room; (2) gathered pursuant to a post-arrest search warrant, the affidavit in support of which failed to establish the existence of probable cause, and was overbroad and reliant on evidence seen during the illegal arrest; and (3) retrieved from two locked briefcases found in Wicks' motel rooms during the search because the search warrant did not specify locked containers such as the briefcases as proper objects of the search. He also challenges the admission into evidence of the papers containing the methamphetamine and cocaine formulae and the enhancement of his sentence.
 
 DISCUSSION
 
 16
 I. Motion to Suppress.
 
 
 17
 Wicks filed a motion to suppress all evidence obtained "as a result of his illegal arrest at the Drovers Inn, in Oklahoma City, Oklahoma." Motion to Suppress Evidence Obtained as a Result of an Illegal Arrest and Search, R. Vol. I, Doc. 8. Wicks does not contest the existence of probable cause to arrest him without a warrant because the arresting officers had reason to believe he " 'had committed or was committing an offense.' " United States v. Wright, 932 F.2d 868, 877 (10th Cir.) (quoting Beck v. Ohio, 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964)), cert. denied, --- U.S. ----, 112 S.Ct. 428, 116 L.Ed.2d 448 (1991).[4] His argument is that there was no justification for entering his motel room and effectuating the warrantless arrest there and, for that reason, the arrest was illegal.
 
 
 18
 In reviewing the denial of a motion to suppress, " 'we must accept the trial court's findings of fact unless they are clearly erroneous.' " United States v. Carr, 939 F.2d 1442, 1443 (10th Cir.1991) (quoting United States v. Gay, 774 F.2d 368, 375 (10th Cir.1985)) United States v. Guglielmo, 834 F.2d 866, 868 (10th Cir.1987). Further, "[a] trial court's determinations which rest upon credibility and reasonable inferences will not be set aside unless clearly erroneous." United States v. Carr, 939 F.2d at 1448; United States v. Skowronski, 827 F.2d 1414, 1417 (10th Cir.1987); United States v. Fountain, 776 F.2d 878, 879 (10th Cir.1985). We must view the evidence in the light most favorable to the government. United States v. Carr, 939 F.2d at 1443; United States v. Leach, 749 F.2d 592, 600 (10th Cir.1984). " 'The ultimate determination of reasonableness under the fourth amendment ... is a question of law which we review de novo.' " United States v. Ross, 920 F.2d 1530, 1533 (10th Cir.1990) (quoting United States v. Arango, 912 F.2d 441, 444 (10th Cir.1990), cert. denied, --- U.S. ----, 111 S.Ct. 1318, 113 L.Ed.2d 251 (1991)); see also United States v. Butler, 904 F.2d 1482, 1484 (10th Cir.1990) (citations omitted); United States v. Carr, 939 F.2d at 1443.
 
 
 19
 A. Warrantless Arrest.
 
 
 20
 Even with probable cause, absent consent or exigent circumstances police officers may not enter a dwelling to make an arrest. Payton v. New York, 445 U.S. 573, 590, 100 S.Ct. 1371, 1382, 63 L.Ed.2d 639 (1980); United States v. Mendoza-Salgado, 964 F.2d 993, 1010 (10th Cir.1992); United States v. Aquino, 836 F.2d 1268, 1272 (10th Cir.1988). A motel room may be considered a "dwelling" for purposes of the validity of a warrantless arrest. See Hoffa v. United States, 385 U.S. 293, 301, 87 S.Ct. 408, 413, 17 L.Ed.2d 374 (1966); United States v. Owens, 782 F.2d 146, 149 (10th Cir.1986) ("[a] motel guest is entitled to constitutional protection against unreasonable searches of his or her room.") See also Minnesota v. Olson, 495 U.S. 91, 97-100, 110 S.Ct. 1684, 1688-89, 109 L.Ed.2d 85 (1990); Stoner v. California, 376 U.S. 483, 490, 84 S.Ct. 889, 893, 11 L.Ed.2d 856 (1964); United States v. Carr, 939 F.2d at 1446.
 
 
 21
 There is no issue of consent in this case. Accordingly, we consider whether the district court correctly denied Wicks' motion to suppress because it concluded that exigent circumstances justified the warrantless arrest of Wicks in his motel room.
 
 
 22
 The district court concluded that exigent circumstances justified the warrantless arrest of Wicks in his motel room for the following reasons:
 
 
 23
 The information supplied to DEA by Mr. Skaggs would lead a reasonable person to believe that Mr. Wicks either had contraband drugs not yet sold, or had the proceeds of contraband drugs that had been sold, plus the firearms that Mr. Skaggs had seen.
 
 
 24
 I find it's a reasonable conclusion by the arresting authorities that it would be safer and also more efficacious and easier for the arrest to be done inside the motel room than outside in the parking place, and certainly as compared with an arrest of the Defendant, Mr. Wicks, if he got in the Lincoln and was driving down I-35. I think it's reasonable for the arresting authorities to conclude that the field of fire is safer with respect to the public for an arrest in a room, and also I think it's reasonable that an inference be drawn that it's less likely that Mr. Wicks would have the firearms on his person at the time in a room than he would have outside.
 
 
 25
 Another important matter is the cyclic nature of Mr. Wicks' trips. I haven't heard anything to rebut the information here that he got to Oklahoma at about eight-day intervals, give or take a bit. That he had been here three, four, five, six days by the date of the arrest, that would lead reasonable agents to conclude that the time was soon coming when he would depart in accordance with the cycle.
 
 
 26
 Now, superimposed on that is the evidence, which I find credible, that agents reasonably concluded that Mr. Wicks felt some anxiety about consummating a transaction at the Meridian Plaza, fearing that that was a setup. And as a matter of fact, Mr. Wicks' instincts served him well because it was. Obviously you can't justify what happened here on the bases of a retrospective look. But the circumstances were such so that anybody in Mr. Wicks' situation would understandably be antsy, and it's just consistent with human nature that he was. And given this anxiety, the officers' conclusions that there was a probability that Mr. Wicks would check-out and leave is really strongly fortified. So put all these things together and those circumstances justify entry into the premises to accomplish the arrest.
 
 
 27
 R.Vol. III at 66-67 (emphasis added). We cannot say that those findings and the inferences drawn from the evidence are clearly erroneous. The question, then, is whether those findings are sufficient to justify the conclusion that, due to exigent circumstances, the warrantless arrest of Wicks in his motel room was reasonable under the Fourth Amendment.
 
 
 28
 The government bears the burden of proving exigency. United States v. Maez, 872 F.2d 1444, 1452 (10th Cir.1989); United States v. Aquino, 836 F.2d 1268, 1271 (10th Cir.1988); United States v. Cuaron, 700 F.2d 582, 586 (10th Cir.1983). "In assessing whether the burden was met, we are 'guided "by the realities of the situation presented by the record." ' " United States v. Cuaron, 700 F.2d at 586 (quoting United States v. McEachin, 670 F.2d 1139, 1144 (D.C.Cir.1981) (quoting United States v. Robinson, 533 F.2d 578, 581 (D.C.Cir.1976) (en banc))). We must " 'evaluate the circumstances as they would have appeared to prudent, cautious and trained officers.' " United States v. Cuaron, 700 F.2d at 586 (quoting United States v. Erb, 596 F.2d 412, 419 (10th Cir.), cert. denied, 444 U.S. 848, 100 S.Ct. 97, 62 L.Ed.2d 63 (1979)). We note, also, that there is " 'no absolute test for the presence of exigent circumstances, because such a determination ultimately depends on the unique facts of each controversy.' " United States v. Justice, 835 F.2d 1310, 1312 (10th Cir.1987) (quoting United States v. Jones, 635 F.2d 1357, 1361 (8th Cir.1980)), cert. denied, 487 U.S. 1238, 108 S.Ct. 2909, 101 L.Ed.2d 940 (1988).
 
 
 29
 "When officers have reason to believe that criminal evidence may be destroyed, or removed, before a warrant can be obtained, the circumstances are considered sufficiently critical to permit officers to enter a private residence in order to secure the evidence while a warrant is sought."
 
 
 30
 United States v. Chavez, 812 F.2d 1295, 1299 (10th Cir.1987) (quoting United States v. Cuaron, 700 F.2d 582, 586 (10th Cir.1983)) (citations omitted); see also United States v. Carr, 939 F.2d at 1448; United States v. Aquino, 836 F.2d 1268, 1272 (10th Cir.1988). In addition to insuring that evidence will not be destroyed, officers may also make a warrantless arrest or conduct a warrantless search if they believe that their own lives or the lives of others are at risk. Warden v. Hayden, 387 U.S. 294, 298-99, 87 S.Ct. 1642, 1645-46, 18 L.Ed.2d 782 (1967); United States v. Smith, 797 F.2d 836, 840 (10th Cir.1986). We have observed that, where fear that evidence will be destroyed provides the exigency, the existence of the exigency must be " 'supported by clearly defined indications of exigency that are not subject to police manipulation or abuse,' " United States v. Carr, 939 F.2d at 1448 (quoting United States v. Aquino, 836 F.2d at 1272), and it is " 'available only for serious crimes.' " Id. Cf. Minnesota v. Olson, 495 U.S. 91, 100, 110 S.Ct. 1684, 1690, 109 L.Ed.2d 85 (1990) (exigent circumstances are "hot pursuit of a fleeing felon, or imminent destruction of evidence, or the need to prevent a suspect's escape, or the risk of danger to the police or to other persons inside or outside the dwelling.") (citations omitted); United States v. Smith, 797 F.2d 836, 840 (10th Cir.1986) ("[t]he basic aspects of the 'exigent circumstances' exception are that (1) the law enforcement officers must have reasonable grounds to believe that there is immediate need to protect their lives or others or their property or that of others, (2) the search must not be motivated by an intent to arrest and seize evidence, and (3) there must be some reasonable basis, approaching probable cause, to associate an emergency with the area or place to be searched"); United States v. Gonzalez, 763 F.2d 1127, 1132 n. 5 (10th Cir.1985) (" '[e]xigent circumstances' generally refers to ...: imminent danger of death or serious bodily harm, imminent danger of destruction of important property, response to an emergency, or hot pursuit.").
 
 
 31
 Wicks does not suggest that the indications of exigency in this case were created by the police or manipulated in any specific way, and he does not dispute the seriousness of the crime involved. See United States v. Carr, 939 F.2d at 1448 ("Drug trafficking crimes are serious...."); United States v. Aquino, 836 F.2d at 1273 ("Our cases indicate that the sale of illegal drugs is a sufficiently severe offense...."). Applying the broad definitions of exigent circumstances to the particular facts of this case, as found by the district court, we affirm the conclusion that the warrantless arrest of Wicks in his motel room did not violate the Fourth Amendment.
 
 
 32
 The indications of exigency here--a fear that, because of Wicks' increasing nervousness and his suspicions about Skaggs and the Meridian Plaza motel, and because of Wicks' point in his "cycle," he might be planning to flee soon in a car on to the open highway, coupled with an awareness that he sometimes was armed--have formed the basis for previous findings of exigency. See United States v. Aquino, 836 F.2d at 1273 (presence of individuals "who gave evasive answers to police questions" during arrest of buyer, and release of those persons which "created the possibility that news of the arrest would reach others in the drug connection," along with belief that supplier was growing suspicious, constituted exigent circumstances justifying warrantless entry into home); United States v. Mabry, 809 F.2d 671 (10th Cir.) (concern that a buyer of drugs would not be able to return quickly to his supplier, so that the supplier would become nervous and destroy evidence or flee, justified warrantless entry into supplier's home), cert. denied, 484 U.S. 874, 108 S.Ct. 33, 98 L.Ed.2d 164 (1987); Bledsoe v. Garcia, 742 F.2d 1237, 1241 (10th Cir.1984) ("the resistance [to officers] and the possibility of flight justified the immediate actions taken to apprehend [the defendant] ... on the basis of exigent circumstances"); United States v. Tabor, 722 F.2d 596, 598 (10th Cir.1983) ("noise ... together with the agent's suspicion that another person possibly armed and dangerous was on the premises, provided the exigent circumstances"); United States v. Cuaron, 700 F.2d 582 (10th Cir.1983) (people coming and going from supplier's house, along with concern that supplier would become nervous and flee or destroy evidence if buyer did not return to complete transaction were sufficient to establish exigent circumstances); cf. United States v. Stewart, 867 F.2d 581 (10th Cir.1989) (general information about drug traffickers, without specific information relating to specific residence searched or inhabitants thereof, accompanied by marginally reliable information that defendant had carried a pistol on one occasion, insufficient to establish exigent circumstances).
 
 
 33
 Some cases have presented more compelling indications of exigency. See, e.g., United States v. Carr, 939 F.2d 1442 (10th Cir.1991) (strong odor of drug (PCP) emanating from motel room, "commotion, shuffling and movement inside the motel room," and sound of toilet flushing constituted exigent circumstances); United States v. Erb, 596 F.2d 412, 418 (10th Cir.) (strong odor of drug used in illegal methamphetamine laboratory emanating from residence, coupled with unexpectedly early arrival of suspect which led officers to believe laboratory was being dismantled and evidence destroyed, and officers' personal knowledge that suspect was a "dangerous person" and that laboratories had potential to cause explosions constituted exigent circumstances), cert. denied, 444 U.S. 848, 100 S.Ct. 97, 62 L.Ed.2d 63 (1979). Nonetheless, evaluating the circumstances "as they would have appeared to prudent, cautious, and trained officers," United States v. Cuaron, 700 F.2d at 586, we conclude that exigent circumstances justified Wicks' arrest.[5] Accordingly, the district court correctly denied Wicks' motion to suppress on that ground.
 
 
 34
 B. Search of Motel Rooms.
 
 
 35
 We next consider whether the district court properly denied the motion to suppress on the ground that the affidavit supporting the search warrant established probable cause to search the motel rooms for the evidence seized, and described that evidence with particularity.
 
 
 36
 The Fourth Amendment states, "no Warrants [for searches and seizures] shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the person or things to be seized." U.S. Const. amend. IV; United States v. Mesa-Rincon, 911 F.2d 1433, 1436 (10th Cir.1990). Two requirements therefore exist for search warrants: "probable cause supported by an oath or affirmation and a particular description of the place, persons and things to be searched and seized." United States v. Mesa-Rincon, 911 F.2d at 1436; see also United States v. Harris, 903 F.2d 770, 774-75 (10th Cir.1990).
 
 
 37
 The existence of probable cause is a "common-sense standard" requiring "facts sufficient 'to warrant a man of reasonable caution in the belief that an offense has or is being committed.' " United States v. Mesa-Rincon, 911 F.2d at 1439 (quoting Brinegar v. United States, 338 U.S. 160, 175, 69 S.Ct. 1302, 1311, 93 L.Ed. 1879 (1949)); see also United States v. Corral-Corral, 899 F.2d 927, 931 (10th Cir.1990). There must be sufficient evidence for the magistrate to conclude that " 'a "substantial basis for ... conclu[ding]" that a search would uncover evidence of wrongdoing.' " United States v. Mesa-Rincon, 911 F.2d at 1439 (quoting Illinois v. Gates, 462 U.S. 213, 236, 103 S.Ct. 2317, 2331, 76 L.Ed.2d 527 (1983) (quoting Jones v. United States, 362 U.S. 257, 271, 80 S.Ct. 725, 736, 4 L.Ed.2d 697 (1960))); United States v. Harris, 903 F.2d at 774; United States v. Cardall, 773 F.2d 1128, 1131 (10th Cir.1985). "In assessing whether a search warrant is supported by probable cause, a magistrate's determination of probable cause must be given considerable deference." United States v. $149,442.43 in United States Currency, 965 F.2d 868, 872 (10th Cir.1992) (citing Illinois v. Gates, 462 U.S. 213, 236, 103 S.Ct. 2317, 2331, 76 L.Ed.2d 527 (1983); see also United States v. Corral-Corral, 899 F.2d at 931; United States v. Peveto, 881 F.2d 844, 850 (10th Cir.), cert. denied, 493 U.S. 943, 110 S.Ct. 348, 107 L.Ed.2d 336 (1989). We will not, however, defer to a magistrate's determination "if the affidavit provides no substantial basis for determining the existence of probable cause." United States v. $149,442.43 in United States Currency, 965 F.2d at 872 (citing United States v. Leon, 468 U.S. 897, 915, 104 S.Ct. 3405, 3416, 82 L.Ed.2d 677 (1984)).
 
 
 38
 Wicks argues that the only information the magistrate had suggesting that evidence of wrongdoing would be found in the motel rooms was the white powder observed in plain view by the agents during the course of Wicks' arrest, and presumed by them to be either methamphetamine or a cutting agent. Since, as Wicks asserts, his arrest was illegal, the powder is "fruit of the poisonous tree" under Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), and may not form the basis for a finding of probable cause. This argument fails with our conclusion that Wicks' arrest was legal. Evidence seen in plain view incident to a valid arrest is subject to seizure and is admissible. See Texas v. Brown, 460 U.S. 730, 738-39, 103 S.Ct. 1535, 1541, 75 L.Ed.2d 502 (1983); United States v. Silkwood, 893 F.2d 245, 247 (10th Cir.1989), cert. denied, 496 U.S. 908, 110 S.Ct. 2593, 110 L.Ed.2d 274 (1990). It certainly could form the basis for establishing probable cause that evidence of drug trafficking would be found in the motel rooms.
 
 
 39
 Moreover, the affidavit recited other information, including information from Skaggs, and from recorded phone conversations between Skaggs and Wicks, all of which provided further indicia of Wicks' involvement in drug trafficking from his motel rooms and support the conclusion that evidence of that drug trafficking would be found there. The agents' opinion, based on their experience, that such evidence would be found in the rooms is entitled to consideration in the determination of the existence of probable cause. See United States v. Sullivan, 919 F.2d 1403, 1423 (10th Cir.1990) (this court upheld finding of probable cause to issue search warrant based in part on "affiant's experience and expertise as a narcotics agent."); United States v. Corral-Corral, 899 F.2d at 937 ("Courts frequently have relied on the expert opinion of officers in determining where contraband may be kept."); United States v. Hoyos, 892 F.2d 1387, 1392 (9th Cir.1989) ("[t]he experience and expertise of the officers involved in the investigation and arrest may be considered in determining probable cause."), cert. denied, 498 U.S. 825, 111 S.Ct. 80, 112 L.Ed.2d 52 (1990). We affirm the district court's conclusion that probable cause supported the issuance of the search warrant.
 
 
 40
 Wicks next argues that the warrant fails to meet the second part of the Fourth Amendment's requirement, in that it is overbroad, as it is "cast in general terms and lack the specificity required to pass constitutional scrutiny." Appellant's Brief at 14. He argues that the items listed in the affidavit attached to the warrant are mere "boilerplate" items, which the agents testified they would expect ordinarily to find in the residence or dwelling of a drug trafficker, but which they admittedly had no specific reason to believe were in Wicks' motel rooms.
 
 
 41
 The particularity requirement of the Fourth Amendment "prevents a 'general, exploratory rummaging in a person's belongings,' Coolidge v. New Hampshire, 403 U.S. 443, 467 [91 S.Ct. 2022, 2038, 29 L.Ed.2d 564] (1971) and ' "makes general searches ... impossible and prevents the seizure of one thing under a warrant describing another. As to what is to be taken, nothing is left to the discretion of the officer executing the warrant." ' " United States v. Leary, 846 F.2d 592, 600 (10th Cir.1988) (quoting Stanford v. Texas, 379 U.S. 476, 485, 85 S.Ct. 506, 512, 13 L.Ed.2d 431 (1965)). It " 'ensures that a search is confined in scope to particularly described evidence relating to a specific crime for which there is demonstrated probable cause.' " United States v. Leary, 846 F.2d at 600 (quoting Voss v. Bergsgaard, 774 F.2d 402, 404 (10th Cir.1985)); see also United States v. Sullivan, 919 F.2d at 1424; United States v. Mesa-Rincon, 911 F.2d at 1440. A warrant describing "items to be seized in broad and generic terms may be valid if the description is as specific as circumstances and nature of the activity under investigation permit." United States v. Harris, 903 F.2d at 775; United States v. Leary, 846 F.2d at 600. We review de novo the legal question of whether a warrant is overbroad. United States v. Harris, 903 F.2d at 774; United States v. Leary, 846 F.2d at 600.
 
 
 42
 The affidavit sworn out by Agent McCullough states his experience in investigating drug trafficking crimes and enumerated the types of evidence of unlawful activity he would expect to find in the homes or residences of drug traffickers, based on his "training, experience, and [his] participation in other investigations involving controlled substances." Appellants Brief, Attachment B at 1. He then detailed what had happened during his investigation of Wicks.
 
 
 43
 We have upheld search warrants cast in comparably broad terms, where the subject of the search was a drug trafficking or drug dealing business, and where circumstances permitted only a more general listing of the items to be seized. See, e.g., United States v. Sullivan, 919 F.2d at 1424 and n. 31 (upholding validity of search warrant seeking "[c]ertain dangerous substances, the same being narcotics, marijuana, hallucinogens, barbiturates, amphetamines and meth-amphetamine ... equipment and paraphernalia used in the manufacture, distribution, administration, utilization, or consumption of said controlled dangerous substances ... including flasks, heating mantles, hoses, glassware, chemical compounds ... personal property consisting of records, receipts, papers, instrumentalities, and documents related to an on-going suspected criminal enterprise in the trafficking of and conspiracy to distribute, controlled dangerous substances, including but not limited to, phone records and bills, utility bills, and/or receipts, address books, records, photographs ... documents and receipts of travel, diaries, all monies, receipts, records and documents which show unusual, or suspect monetary transactions and receipts or keys to safety deposit boxes."); United States v. Harris, 903 F.2d at 774-75 (upholding validity of warrants listing seven categories of items to be seized, including "travel records and receipts ... bank safe deposit records ... currency ... stocks, bonds or other securities ... gold silver and/or jewelry ... books, records, memorandum, notes, bank records, investment records, or any other documents evidencing the obtaining, secreting, transfer, and/or concealment of assets and/or money obtained through illegal means."); see also United States v. Riley, 906 F.2d 841, 845 (2d Cir.1990) ("It is true that a warrant authorizing seizure of records of criminal activity permits officers to examine many papers in a suspect's possession to determine if they are within the described category. But allowing some latitude in this regard simply recognizes the reality that few people keep documents of their criminal transactions in a folder marked 'drug records.' "); United States v. Lamport, 787 F.2d 474, 476 (10th Cir.), cert. denied, 479 U.S. 846, 107 S.Ct. 166, 93 L.Ed.2d 104 (1986). We hold that the warrant met the Fourth Amendment's particularity requirement.[6] The district court therefore correctly denied Wicks' motion to suppress evidence seized pursuant to the warrant.[7]
 
 
 44
 II. Evidentiary Rulings.
 
 
 45
 We turn now to Wicks' argument that the district court erred in overruling his objections to the admission of the papers containing a formula for making methamphetamine, a list of precursor chemicals, and a recipe to "cook" crack cocaine, all of which were found in one of the briefcases seized from Wicks' motel rooms. Wicks objected to their admission at trial on the grounds that they were hearsay, and did not fall within any of the exceptions to the hearsay rule. We disagree.
 
 
 46
 The admission or exclusion of evidence is reviewable for an abuse of discretion. United States v. Sturmoski, 971 F.2d 452, 458 (10th Cir.1992); United States v. Alexander, 849 F.2d 1293, 1301 (10th Cir.1988).
 
 
 47
 Fed.R.Evid. 801(c) defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." A "statement" can include a written assertion. Fed.R.Evid. 801(a). The district court overruled Wicks' objection to these papers "because of the inference that the Jury can draw that the possession of these matters connotes or implies knowledge of the preparation and possession of drugs." R. Vol. V at 276. The government subsequently presented expert testimony identifying the papers as containing a methamphetamine recipe and a list of chemical ingredients.
 
 
 48
 We hold that the papers were not hearsay, because they were not admitted for the purpose of proving the truth of any matter asserted therein. They were admitted solely to permit the inference to be drawn that Wicks' was involved in drug trafficking. While some amount of "reading" or comprehending of the nature of the written material was required in order to identify them as drug-related, no further use was made of the contents of those materials. See United States v. Peveto, 881 F.2d 844, 853-54 (10th Cir.) (traffic ticket admitted to tie defendant to van, not to prove truth of any matters asserted in the ticket; "[t]he existence of the ticket, not its assertions, was the point of its admission"), cert. denied, 493 U.S. 943, 110 S.Ct. 348, 107 L.Ed.2d 336 (1989); United States v. Ashby, 864 F.2d 690, 693 (10th Cir.1988) (car title used to tie defendant to car, not to prove she was owner; work order documents admitted to inferentially tie defendant and co-defendant to drug running, not to prove truth of matters asserted therein; "[s]ince these documents were used to tie appellant to the car, they were not hearsay"), cert. denied, 494 U.S. 1070, 110 S.Ct. 1793, 108 L.Ed.2d 794 (1990); United States v. Markopoulos, 848 F.2d 1036, 1039 (10th Cir.1988) (spiral notebook which was used to log travel expenses not hearsay when admitted only to link defendant circumstantially to conspiracy, whereas rental car contract, credit card voucher and receipts were hearsay when admitted to show identity of renter or fact of payment); United States v. Shepherd, 739 F.2d 510, 514 (10th Cir.1984) (orders or instructions were not hearsay because they "were offered to show that they occurred rather than to prove the truth of something asserted."); see also United States v. Jaramillo-Suarez, 950 F.2d 1378, 1383 (9th Cir.1991) ("pay/owe sheet ... was admitted for the specific and limited purpose of showing the character and use of the ... apartment" and was therefore not hearsay); cf. United States v. Jefferson, 925 F.2d 1242, 1252 (10th Cir.1991) (bill for a pager was hearsay when introduced to show that defendant had purchased pager service and that he owed money for the purchase), supplemental opinion, 931 F.2d 1396 (10th Cir.), cert. denied, --- U.S. ----, 112 S.Ct. 238, 116 L.Ed.2d 194 (1991).[8]
 
 
 49
 III. Sentence Enhancement--Constitutionality of Prior Convictions.
 
 
 50
 Finally, Wicks contends that the district court erred when it found him subject to the enhanced sentence provisions of the Armed Career Criminal Act, 18 U.S.C. § 924(e), resulting in a guideline sentence calculated under U.S.S.G. § 4B1.4 (offense level of 34, and criminal history category VI, §§ 4B1.4(b)(3)(A) and 4B1.4(c)(2)).[9] He argues that his prior state court convictions for armed robbery, relied upon by the government to satisfy the "three previous convictions" requirement of § 924(e)(1),[10] were unconstitutional because the record of the proceedings in which he pled guilty to those offenses does not affirmatively show that he knowingly and intelligently waived his constitutional rights. Appellant's Brief at 20, 22.
 
 
 51
 The district court held that Wicks failed to meet his burden of establishing that his guilty pleas leading to the prior convictions were constitutionally invalid. Applying a de novo standard of review with respect to the constitutionality of Wicks' guilty pleas in state court, the legality of a sentence enhancement under 18 U.S.C. § 924(e), and the application of the sentencing guidelines, United States v. Roberts, 980 F.2d 645, 647 (10th Cir.1992); United States v. Barney, 955 F.2d 635, 638 (10th Cir.1992); United States v. Maines, 920 F.2d 1525, 1527 n. 4 (10th Cir.1990), cert. denied, --- U.S. ----, 112 S.Ct. 263, 116 L.Ed.2d 216 (1991), we agree with and affirm the district court on the issue.
 
 
 52
 The three state court convictions challenged by Wicks were entered on April 17, 1963, in a single judicial proceeding in California Superior Court, Los Angeles County, Case No. 270561. In that proceeding Wicks pled guilty to three separate counts of robbery in the first degree.[11]
 
 
 53
 The only evidence submitted to the district court relating to these 1963 convictions is a transcript of the April 17, 1963 hearing, a copy of which is attached to this opinion. The transcript shows that Wicks was represented by counsel, the Deputy Public Defender of Los Angeles County; and that the proceeding was an extension of an earlier hearing at which Wicks had pled guilty to some or all of the same charges. As the transcript indicates, Wicks was granted leave to withdraw the pleas he entered earlier, and allowed to replead.
 
 
 54
 No record of the initial plea hearing in this same proceeding was submitted to the district court by Wicks or the government, and we must assume that it does not exist. The unavailability of the additional transcripts is understandable, given that in California, both now and in 1963, reporters' notes of criminal proceedings may be destroyed after five years. Cal. Gov't Code § 69950; People v. Valdez, 137 Cal.App.3d 21, 187 Cal.Rptr. 65 (1982); cf. Parke v. Raley, --- U.S. ----, ----, 113 S.Ct. 517, 524, 121 L.Ed.2d 391 (1992).[12] In any event, with an obviously incomplete record of the entire plea proceedings in state court, it is impossible without extrinsic evidence to know what other information may exist relating to the voluntariness and informed nature of Wicks' pleas.
 
 
 55
 Nothing in the record shows or suggests that Wicks has previously challenged these 1963 armed robbery convictions on constitutional or other grounds. Indeed, he did not represent to the district court, by affidavit or otherwise, that his guilty pleas in 1963 were not in fact voluntarily and intelligently entered. He neither alleges nor argues coercion, deception, surprise, actual lack of knowledge as to the charges or penalties (his sentences were concurrent), lack of competence or understanding for any reason, or any other basis in fact for attacking the lawfulness, regularity, or finality of his state court convictions.[13]
 
 
 56
 Instead, Wicks mounts a purely legal argument based largely on Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).[14] His thesis is that the constitution requires an explicit affirmative showing on the record of the guilty plea proceeding that "the defendant was aware of and voluntarily waived three rights: the privilege against self incrimination, the right to a trial by jury and the right to confront witnesses." Appellant's Brief at 19. Also, the record must further show that "the defendant had a 'full understanding of what the plea connotes and of its consequences.' " Id. (quoting Boykin v. Alabama, 395 U.S. at 244, 89 S.Ct. at 1712). Absent such a showing, Wicks contends that "the prior conviction is invalid as a matter of law." Appellant's Brief at 20 (emphasis added). In short, relying on Boykin, Wicks urges that proof of a knowing and voluntary plea depends on a certain waiver litany on the record; and, lack of an affirmative showing of that litany on the record of the prior proceeding raises an irrebuttable presumption that the plea was unconstitutional. Consistent with that position, Wicks also maintains that the burden is on the government to "adduce proof the defendant knowingly and intelligently entered a plea of guilty." Id.
 
 
 57
 The law does not support those contentions as applied to collateral attacks on final judgments in settings similar to the one here. The most obvious reason is that any new rule established in 1969 by Boykin, whether by way of burden of proof and associated presumptions, specific colloquies and waivers on the record, or otherwise, would not apply to the 1963 convictions involved here. See Perry v. Crouse, 429 F.2d 1083, 1085 (10th Cir.1970) (Boykin does not apply retroactively). And, even if we assumed retroactivity, Boykin still would not apply. The Supreme Court has made it clear that Boykin, which involved a direct review of a conviction, does not in critical respects apply to collateral attacks on previous convictions which have become final. Parke v. Raley, --- U.S. ----, 113 S.Ct. 517, 121 L.Ed.2d 391 (1992). According to the court:
 
 
 58
 To import Boykin 's presumption of invalidity into this very different context [collateral attack on convictions] would, in our view, improperly ignore another presumption deeply rooted in our jurisprudence: the "presumption of regularity" that attaches to final judgments, even when the question is waiver of constitutional rights.
 
 
 59
 Id., --- U.S. at ----, 113 S.Ct. at 523 (quoting Johnson v. Zerbst, 304 U.S. 458, 464, 468, 58 S.Ct. 1019, 1023, 1025, 82 L.Ed. 1461 (1938)). Thus, the Court held that "the Due Process Clause permits a State to impose a burden of production on a recidivism defendant who challenges the validity of a prior conviction under Boykin." Id., --- U.S. at ----, 113 S.Ct. at 525-26.
 
 
 60
 As this holding indicates, Parke involves a constitutional review of burdens of proof and presumptions under state rules governing challenges to prior convictions in recidivism proceedings. The Court noted that federal courts have taken an even stronger position against the type of argument advanced by Raley, and by Wicks here, stating:
 
 
 61
 Under the Armed Career Criminal Act, 18 U.S.C. § 924(e), Courts of Appeals have placed on the defendant the entire burden of proving the invalidity of a prior conviction based on a guilty plea. See, e.g., United States v. Gallman, 907 F.2d 639; 643-645 (CA7 1990), cert. denied, 499 U.S. [----, 111 S.Ct. 1110, 113 L.Ed.2d 219] (1991), accord, United States v. Paleo, 967 F.2d 7, 13 (CA1 1992); United States v. Day, 949 F.2d 973, 982-983 (CA8 1991); United States v. Ruo, 943 F.2d 1274, 1276 (CA11 1991). Courts of Appeals have also allocated the full burden of proof to defendants claiming that an invalid guilty plea renders a prior conviction unavailable for purposes of calculating criminal history under the Sentencing Guidelines. See, e.g., United States v. Boyer, 931 F.2d 1201, 1204-1205 (CA7 1991), cert. denied, 502 U.S. [----, 112 S.Ct. 209, 116 L.Ed.2d 167] (1991). And the text of the Comprehensive Drug Abuse Prevention and Control Act of 1970 itself clearly provides that a defendant raising a constitutional challenge to a prior conviction used for sentence enhancement bears the burden of proof. See 21 U.S.C. § 851(c)(2).
 
 
 62
 Id., --- U.S. at ----, 113 S.Ct. at 525.
 
 
 63
 We join these circuits, and hold that in sentence enhancement proceedings under the Armed Career Criminal Act, 18 U.S.C. § 924(e), once the government has established the fact of a prior conviction based on a guilty plea, the defendant has the entire burden of providing the invalidity of the conviction.[15] See United States v. Stewart, 977 F.2d 81, 85 (3d Cir.1992), cert. denied, --- U.S. ----, 113 S.Ct. 1433, 122 L.Ed.2d 800 (1993); see also United States v. Johnson, 973 F.2d 857, 861 (10th Cir.1992) ("Defendant ... had the burden of proving by a preponderance of the evidence that the conviction was constitutionally invalid....") (citing United States v. Day, 949 F.2d 973, 982 (8th Cir.1991)).
 
 
 64
 We also hold that no presumption of an invalid guilty plea arises when the transcript or other records of the plea proceeding are incomplete or missing, or, at least in pre-Boykin convictions,[16] when the waiver of constitutional rights, or particular expressions of knowledge and voluntariness, do not show on the face of the record. Cf. Parke v. Raley, --- U.S. at ----, 113 S.Ct. at 523 (" 'every act of a court of competent jurisdiction shall be presumed to have been rightly done, till the contrary appears.' " (quoting Voorhees v. Jackson, 10 Pet. 449, 472, 9 L.Ed. 490 (1836))).
 
 
 65
 Under these standards Wicks' argument fails. No presumption is available to him. Therefore, Wicks was required to prove by a preponderance of the evidence that his 1963 guilty pleas were actually involuntary or unknowing, as evaluated according to 1963 rules. Perry v. Crouse, 429 F.2d at 1084-85 (standards of 1965 used to assess the constitutionality of a 1965 conviction used to enhance the defendant's sentence); see United States v. Williamson, 806 F.2d 216, 220-21 (10th Cir.1986) (applying 1965 version of Fed.R.Crim.P. 11 to assess validity of a 1965 conviction under collateral attack).
 
 
 66
 In 1963, a valid guilty plea required that the defendant understand the charges against him and act of his own free will, without coercion. See Machibroda v. United States, 368 U.S. 487, 493, 82 S.Ct. 510, 513, 7 L.Ed.2d 473 (1962) ("A guilty plea, if induced by promises or threats which deprive it of the character of a voluntary act, is void."); Henderson v. Bannan, 256 F.2d 363, 367 (6th Cir.), cert. denied, 358 U.S. 890, 79 S.Ct. 129, 3 L.Ed.2d 118 (1958); see also McGrady v. Cunningham, 296 F.2d 600, 601-02 (4th Cir.1961), cert. denied, 369 U.S. 855, 82 S.Ct. 944, 8 L.Ed.2d 14 (1962); Fullen v. Wyoming, 283 F.2d 116, 116-17 (10th Cir.1960), cert. denied, 366 U.S. 937, 81 S.Ct. 1663, 6 L.Ed.2d 848 (1961); Muhlenbroich v. Heinze, 281 F.2d 881, 883-84 (9th Cir.1960), cert. denied, 365 U.S. 873, 81 S.Ct. 907, 5 L.Ed.2d 861 (1961).[17] Satisfaction of those requirements depends on the totality of the circumstances, including an assessment of both in-court and out-of-court facts. See Perry v. Crouse, 429 F.2d at 1084-85.
 
 
 67
 At a minimum, then, a defendant pointing to a silent or missing record of a prior plea proceeding must begin by also submitting an affidavit or its equivalent asserting that the defendant's plea was in fact not voluntary or was lacking the necessary understanding, and specifying in detail the factual support for such assertion. Self-serving conclusory statements would be unavailing, of course. Cf. Parke v. Raley, --- U.S. at ----, 113 S.Ct. at 527 (court unconvinced by defendant's self-serving assertions that he could not remember whether he was advised of his rights). Affidavits or testimony by judges, government and defense attorneys, probation officers, and others involved in and knowledgeable about the challenged proceedings, and directly supporting the defendant's position, would be probative.[18]
 
 
 68
 Wicks, of course, has submitted no such proof--or any proof at all except an incomplete record. Furthermore, a review of all the circumstances convinces us that Wicks' pleas were in fact knowing and voluntary, as the district court found. He was represented by counsel, which strongly suggests an informed and voluntary plea. See Id.; McGrady v. Cunningham, 296 F.2d at 601; see also Sullivan v. United States, 315 F.2d 304, 305 (10th Cir.), cert. denied, 375 U.S. 910, 84 S.Ct. 203, 11 L.Ed.2d 149 (1963); Bailey v. United States, 312 F.2d 679, 681 (10th Cir.1963); Nunley v. United States, 294 F.2d 579, 579-80 (10th Cir.1961), cert. denied, 368 U.S. 991, 82 S.Ct. 607, 7 L.Ed.2d 527 (1962). His guilty pleas appear to have resulted from a very favorable bargain with the State in which one count against him was dismissed, no other charges were brought against him with respect to a string of approximately 21 armed robberies he committed, and his sentences were concurrent rather than consecutive. Appellant's Brief, Attachment "E". He had prior experience with the criminal process having been convicted of offenses in 1955 and 1958, sentenced to probation and, later, prison and hospitalization. R. Vol. II at pp 20-24. In at least one of the prosecutions in which he was involved he was represented by an attorney. Id. at p 22. See Parke v. Raley, --- U.S. at ----, 113 S.Ct. at 527 (prior experience with the criminal justice system is relevant to the question of whether defendant knowingly waived his constitutional rights). Also, Wicks is an intelligent individual, with a high school education. See id.
 
 
 69
 Finally, it is highly probative of the validity of the 1963 guilty pleas that Wicks has made no showing that he appealed the convictions, or ever sought any other direct or collateral relief until now, almost thirty years after the event. If the pleas were truly involuntary, it is difficult to believe that Wicks would not have challenged them contemporaneously. These circumstances, along with Wicks' responses and the general content of the proceedings reflected in the April 27, 1963, transcript, plus the expanded nature of the proceedings (entering, withdrawing, and reentering pleas, which would require discussion), convince us that Wicks' pleas were entered voluntarily and with full understanding according to 1963 standards.
 
 CONCLUSION
 
 70
 For the reasons stated above, we AFFIRM the judgment of conviction and sentence entered by the district court.
 
 EBEL, Circuit Judge, concurring:
 
 71
 Although I concur in the judgment, I respectfully disagree with the majority's holding that exigent circumstances justified the officers' warrantless entry into Wick's hotel room. First, I believe that the exigent circumstances exception does not apply because the officers learned of most of the allegedly exigent circumstances at least a day before the search. Second, I believe that the district court's findings of fact are simply inadequate to justify the application of the exigent circumstances exception. I will address each reason in turn.
 
 
 72
 The application of the exigent circumstances exception must be "supported by clearly defined indicators of exigency that are not subject to police manipulation or abuse." United States v. Aquino, 836 F.2d 1268, 1272 (10th Cir.1988); see also Steagald v. United States, 451 U.S. 204, 215, 101 S.Ct. 1642, 1649, 68 L.Ed.2d 38 (1981). One such indicator is the length of time that elapses between the point at which the police become aware of the "exigent circumstances" and the time when they undertake the warrantless search. Simply put, "[i]t is difficult to understand how the circumstances were 'exigent' when the officers had an entire day to formulate a response to those circumstances." United States v. Stewart, 867 F.2d at 585 (construing exigent circumstances exception to the federal knock-and-announce statute, 18 U.S.C. § 3109). "Exigency necessarily implies insufficient time to obtain a warrant; therefore, the Government must show that a warrant could not have been obtained in time." United States v. Lai, 944 F.2d 1434, 1442 (9th Cir.1991), cert. denied, --- U.S. ----, 112 S.Ct. 947, 117 L.Ed.2d 116 (1992). Most of "our previous cases involving exigent circumstances have emphasized that the police 'began the process of obtaining a warrant as soon as they had probable cause.' " United States v. Mendoza-Salgado, 964 F.2d 993, 1010 n. 7 (10th Cir.1992) (quoting United States v. Aquino, 836 F.2d 1268, 1273 (10th Cir.1988)).
 
 
 73
 Thus, where officers are aware of the "exigent circumstances" on which they seek to justify a warrantless search far in advance of the actual search--under circumstances where the officers could have obtained a search warrant--the government may not justify the search under the exigent circumstances exception. See Steagald v. United States, 451 U.S. 204, 211, 101 S.Ct. 1642, 1647, 68 L.Ed.2d 38 (1981) (holding no exigent circumstances where, upon learning that a federal fugitive might be staying at a house in Atlanta, Georgia, federal agents waited two days before searching the house without a warrant); G.M. Leasing Corp. v. United States, 429 U.S. 338, 358-59, 97 S.Ct. 619, 631-32, 50 L.Ed.2d 530 (1977) (upholding district court's implicit finding that there were no exigent circumstances, where agents delayed the challenged search for two days following their first entry onto the premises and for one day following the observation that materials were being removed from the premises).
 
 
 74
 In the instant case, the DEA agents learned at least a day before the search of most of the "exigent circumstances" on which they now rely to justify the warrantless search. The search took place at approximately 11:00 a.m. on August 9. By the morning of August 8, however, the DEA agents had probable cause to believe that Wicks was engaged in drug trafficking, that he might be armed and dangerous, that he might destroy evidence, and that he might be departing soon.
 
 
 75
 Agent Ricker interviewed Skaggs at approximately 9:00 a.m. August 8, more than twenty-four hours before the August 9 search took place. Skaggs advised Agent Ricker that Wicks made drug runs from California to Oklahoma and back to California approximately every eight days. Agent Ricker further testified that as a result of this interview and corroborating phone calls between Wicks and Skaggs on August 8, he felt he had "pretty good probable cause" to seek an arrest or search warrant. When asked whether he had received any more probable cause to arrest Wicks on the morning of August 9 than he had either the night before or the day before, Agent Ricker testified that he had received "none particularly, no sir."
 
 
 76
 Agent Schickedanz also interviewed Skaggs.[1] Skaggs informed him that Wicks had always been armed with at least two weapons; that Wicks made frequent trips to other cities; and that Wicks' routine was to leave every three to four days.
 
 
 77
 From interviews with Skaggs, then, DEA agents knew a day before the search that Wicks was heavily involved in drug trafficking and that he therefore might have drugs in his hotel room. They knew that he had been in Oklahoma City for a few days, and thus, according to his routine, would be leaving soon. They also knew that Wicks usually carried two guns. Furthermore, they knew that checkout time at most motels is noon, and that if Wicks were going to depart on Friday, August 9, it would probably be around that time.[2] Assuming these facts could ever constitute "exigent circumstances," they certainly did not in the context of this case, where the agents knew of these facts at least a day before the warrantless search and in plenty of time to get a warrant.
 
 
 78
 At most, the only arguably meaningful, additional information the agents gained on the morning of August 9 was their observation that Wicks aborted his trip to the Meridian Plaza motel at 9 a.m. on the morning of the search. At the meeting, Wicks was to receive a $9,000 payment for methamphetamine that he had previously given Skaggs. In a subsequent telephone call to Skaggs, Wicks expressed concern that Skaggs' hotel room had no access to the outside. At the suppression hearing, the agents suggested that Wicks' aborted attempt to collect the money indicated that he was becoming anxious and might destroy evidence or flee. However, I do not believe that Wicks' aborted trip to the Meridian Plaza reasonably gives rise to an inference that he might flee or destroy evidence.
 
 
 79
 It is important to remember that in this case we are dealing with the privacy of the dwelling place. "Because '[i]t is a "basic principle of Fourth Amendment law" that searches and seizures inside a home without a warrant are presumptively unreasonable,' Payton v. New York, 445 U.S. 573, 586, 100 S.Ct. 1371, 1380, 63 L.Ed.2d 639 (1980), this burden is especially heavy when police seek to enter a suspect's home even pursuant to a legitimate seizure." United States v. Aquino, 836 F.2d 1268, 1271 (10th Cir.1988) (citations omitted).[3] This Circuit, as well as the Supreme Court, has previously expressed concern that the exigent circumstances exception to the warrant requirement must not create a "potential for abuse" such that police are placed in a situation where they can create the exception to the warrant requirement. See Aquino, 836 F.2d at 1272 (quoting Steagald v. United States, 451 U.S. 204, 215, 101 S.Ct. 1642, 1649, 68 L.Ed.2d 38 (1981)). In United States v. Smith, 797 F.2d 836 (10th Cir.1986), we stated that "there must be some reasonable basis, approaching probable cause, to associate an emergency with the place to be searched." Id. at 840 (emphasis added). I just do not believe that the government has established on this record an emergency to a degree approaching probable cause, nor did it establish any immediacy that precluded the reasonable possibility of first obtaining a warrant.
 
 
 80
 Nor do I believe the district court has made adequate findings of fact to support its legal conclusion that exigent circumstances existed. The majority opinion sets forth the district court's ruling, so I will not repeat it verbatim here, except to emphasize the district court's key findings:
 
 
 81
 [I]t would be safer and also more efficacious and easier for the arrest to be done inside the motel room.... [I]t's less likely that Mr. Wicks would have the firearms on his person at the time in a room than he would have outside.... [T]he time was coming soon when he would depart in accordance with the cycle.... Mr. Wicks felt some anxiety about consummating a transaction at the Meridian Plaza....
 
 
 82
 Vol. III at 66-67 (emphasis added). These findings, even if accepted, are not findings of exigency sufficient to disregard traditional Fourth Amendment protections that attach to dwelling places. They are findings of conjecture, vague concerns, and convenience that simply do not rise to the level of exigent circumstances.[4]
 
 
 83
 However, although I believe the search itself was illegal under the Fourth Amendment, I nevertheless concur in the judgement. Like the majority, I reject Wicks' argument that the only information that the magistrate had suggesting that evidence of wrongdoing would be found in his motel room was the white powder that the agents observed in plain view during the warrantless search. Although I agree with Wicks that his arrest was illegal and that the white powder, as "fruit of the poisonous tree" under Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), could not form the basis for a finding of probable cause, I nevertheless agree with the majority that the other evidence recited in the affidavit was sufficient to support the issuance of the warrant. I therefore would affirm the judgment of the district court.
 
 
 
 *
 The Honorable John W. Lungstrum, United States District Court for the District of Kansas, sitting by designation
 
 
 [1]
 Agent Ricker testified at the suppression hearing as follows:
 Q. Now, based upon what Mr. Skaggs had told you the day before, and even some of the phone conversations that you listened in on the day before, did you feel that you had sufficient evidence to seek an arrest warrant or a search warrant at that time?
 A. (Ricker) Based more on the telephone conversations corroborating what Mr. Skaggs said, I felt like we had pretty good probable cause, yes, sir.
 R. Vol. III at 21.
 
 
 [2]
 Agent Schickedanz testified as follows at the suppression hearing:
 I felt that Mr. Wicks would be departing; that due to his hesitancy of meeting with Mr. Skaggs, that he might be in an attempt to destroy evidence; that he might flee from the area; that if he got out on the highway, we would not be able to make a safe car stop of him; and that it would have been easier, and it was easier, to arrest him in the motel room.
 R. Vol. III at 34-35.
 
 
 [3]
 The affidavit was physically attached to the warrant, so that its contents are incorporated into the warrant. See United States v. Leary, 846 F.2d 592, 603 (10th Cir.1988)
 
 
 [4]
 At the hearing on Wicks' motion to suppress, Wicks' attorney stated as follows:
 Your Honor, I'm not so much contesting [the] fact that Mr. Wicks was arrested without a warrant. Certainly, I think case law and not only that but the statute allows an agent to make an arrest if he has probable cause to believe a felony was committed. The illegality of the arrest that I have raised is the fact that it occurred within Mr. Wicks's residence, for these purposes. And under Payton our argument is that there were not exigent circumstances which allowed the officers to go through the threshold to make the arrest.
 R. Vol. III at 3. A little later in the hearing, the following exchange occurred:
 THE COURT: Well, when you're referring to exigent circumstances, then, I presume that it's only in reference to arrest in the motel room and not with reference to the validity of the arrest otherwise.
 MR. EARLEY [Wicks' attorney]: Correct.
 Id. at 22.
 
 
 [5]
 We note that, as we recently stated, "our previous cases involving exigent circumstances have emphasized that the police 'began the process of obtaining a warrant as soon as they had probable cause.' " United States v. Mendoza-Salgado, 964 F.2d 993, 1010 n. 7 (10th Cir.1992) (quoting United States v. Aquino, 836 F.2d 1268, 1273-74 (10th Cir.1988)). See also United States v. Chavez, 812 F.2d 1295, 1300 (10th Cir.1987) ("We are cognizant of the fact that the time necessary to obtain a warrant is relevant to a determination of whether circumstances are exigent."); United States v. Mabry, 809 F.2d at 678-79; United States v. Cuaron, 700 F.2d at 587-89; United States v. Erb, 596 F.2d at 419. The agents in this case began warrant proceedings as soon as Wicks had been arrested and the motel room secured. Wicks has made no argument here or below concerning the promptness of the institution of warrant proceedings
 
 
 [6]
 Our decision in United States v. Leary, 846 F.2d 592 (10th Cir.1988), in which we invalidated a search warrant, is distinguishable. The Leary warrant was overbroad, as it permitted a search of any document which showed a violation of a general federal statute, it failed to provide any means by which the executing officers could differentiate between documents to be seized and ordinary business records, information was available to make the warrant more specific, and it permitted a search of items far beyond that for which probable cause had been established. Such is not the case here, where there was probable cause to believe that Wicks had violated various laws relating to drug trafficking, and the warrant directed the seizure of items related to that
 
 
 [7]
 We include the briefcases within our holding that the motion to suppress was properly denied. Wicks argues that the search of the briefcases in Wicks' motel room "was a direct result of the general nature of [the search] warrant." Appellant's Brief at 15. Wicks concedes, as he must, that under United States v. Ross, 456 U.S. 798, 820-21, 102 S.Ct. 2157, 2170-71, 72 L.Ed.2d 572 (1982), "[a] lawful search of fixed premises generally extends to the entire area in which the object of the search may be found.... When a legitimate search is under way, and when its purpose and its limits have been precisely defined," containers may be searched. We have concluded that the search was lawful. Wicks does not seriously dispute that objects of the search might be found in briefcases. The search of the briefcases was therefore permissible
 
 
 [8]
 Even assuming, arguendo, that the evidence is hearsay and the court incorrectly admitted it, we would find the error harmless, under either the "nonconstitutional harmless error standard of review pursuant to Fed.R.Civ.P. 52" or the constitutional plain error standard of Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967). United States v. Jefferson, 925 F.2d at 1253-54; see also United States v. Markopoulos, 848 F.2d at 1039. Furthermore Wicks did not object when the government's expert witness identified the written documents as containing a recipe for the manufacture of methamphetamine and a list of precursor chemicals, which testimony, in effect, set forth the hearsay contained in the documents. He therefore "failed to preserve the objection he raised when the documents were first admitted." United States v. Markopoulos, 848 F.2d at 1039
 
 
 [9]
 The guideline range for offense level 34 and criminal history category VI is 262 to 327 months. United States Sentencing Commission, Guidelines Manual, Sentencing Table (Nov. 1990) (applicable to this case). The district court sentenced Wicks at the top of the range, 327 months, where permitted by the nature of the offense (counts 1 and 3) to be served concurrently with each other and with lesser sentences for the other offenses charged; except that the five year sentence for count 8 is consecutive to all other counts as required by statute, 18 U.S.C. § 924(c)(1)
 
 
 [10]
 Section 924(e) of Title 18, U.S.C., requires the imposition of an enhanced sentence--
 In the case of a person who violates section 922(g) of this title and has three previous convictions by any court referred to in section 922(g)(1) of this title for a violent felony or a serious drug offense, or both, committed on occasions different from one another....
 18 U.S.C. § 924(e)(1) (emphasis added).
 U.S.S.G. § 4B1.4(a) provides that: "A defendant who is subject to an enhanced sentence under the provisions of 18 U.S.C. § 924(e) is an armed career criminal." Offense levels and criminal history categories for armed career criminals are set out in §§ 4B1.4(b) and (c).
 
 
 [11]
 The robberies occurred on separate dates. Such convictions may be counted separately, though simultaneously entered in a single judicial proceeding, with sentences to run concurrently. United States v. Permenter, 969 F.2d 911, 915 (10th Cir.1992); United States v. Bolton, 905 F.2d 319, 323 (10th Cir.1990), cert. denied, 498 U.S. 1029, 111 S.Ct. 683, 112 L.Ed.2d 674 (1991)
 
 
 [12]
 It is unclear how the government obtained the transcript submitted to the district court. It was provided to Wicks by the government, and is attached to his brief without explanation of its origin
 
 
 [13]
 Indeed, Wicks never contends that had the court made the disputed affirmative showing his decision to plead guilty would have been materially altered. See, e.g., United States v. De Robertis, 715 F.2d 1174, 1181 (7th Cir.1983) ("[Petitioner] has never contended that he would have made a different decision had he known about [the details of jury trial waiver.]"), cert. denied, 464 U.S. 1072, 104 S.Ct. 982, 79 L.Ed.2d 219 (1984); see also United States v. Williamson, 806 F.2d 216, 219 (10th Cir.1986) (defendant did not rely solely on Boykin violation and made actual allegations of involuntariness and lack of knowledge); Fed.R.Crim.P. 11(h) (absence of affirmative showing need not compel reversal of conviction if shown to be harmless error); cf. Moore v. Jarvis, 885 F.2d 1565, 1573-74 (11th Cir.1989) (Cox, J., dissenting)
 
 
 [14]
 Wicks' arguments below were similar. See R.Vol. VI at 18 ("This really isn't a factual question, I don't think, at all. I think what the Court needs to do is to take into consideration ... Boykin ... in considering whether this record ... shows that a knowing and voluntary and intelligent plea was entered back in 1963."); id. at 19 ("The test is whether or not those rights ... are sufficiently explained, in whatever form, on the record to the Defendant. And based upon that, you can tell from the record that the Defendant knew what he was doing...."); id. at 20 ("[The guilty plea transcript does] not show that there was a knowing and voluntary, intelligent waiver of any right."); id. at 21 ("[T]his just clearly is an inadequate record to base an enhancement such as this one.")
 
 
 [15]
 That burden of proof is automatically imported into U.S.S.G. § 4B1.4 by its terms, applying the section, among other things, to defendants "subject to an enhanced sentence under the provisions of 18 U.S.C. § 924(e)."
 
 
 [16]
 The issue of post-Boykin convictions is not before us. See, however, the post-Boykin case of United States v. Johnson, 973 F.2d at 861, in which the defendant had the full burden of proving the constitutional invalidity of his conviction
 
 
 [17]
 Just as Boykin 's requirements and accompanying presumption did not apply in 1963, California did not impose any Boykin-like requirements in 1963. In re Tahl, 1 Cal.3d 122, 81 Cal.Rptr. 577, 581-82, 460 P.2d 449, 453-54 (1969), cert. denied, 398 U.S. 911, 90 S.Ct. 1708, 26 L.Ed.2d 72 (1970)
 
 
 [18]
 Where the record of the proceedings, including a signed waiver form or a hearing transcript, affirmatively shows a waiver, knowledge, or voluntary act, that record is entitled to a presumption of regularity and cannot be impeached except in the most compelling circumstances
 
 
 [1]
 The record is unclear as to when Agent Schickedanz's interview of Skaggs took place, although Agent Ricker's testimony suggests that the interviews of Skaggs took place on August 8. Because the government bears the burden of proving exigency United States v. Maez, 872 F.2d 1444, 1452 (10th Cir.1989), the government had the burden of eliciting from its witnesses what exigent circumstances they were aware of and when they became aware of them. Consequently, the government bears the consequence of inadequate proof on the "when-did-the-agents-know-the-circumstances" question
 
 
 [2]
 The agents did not attempt to call the motel office to determine what time checkout was or whether Wicks was indeed checking out that day
 
 
 [3]
 As the majority notes, a motel room may be considered a "dwelling" for purposes of the validity of a warrantless arrest. See Hoffa v. United States, 385 U.S. 293, 301, 87 S.Ct. 408, 413, 17 L.Ed.2d 374 (1966); United States v. Owens, 782 F.2d 146, 149 (10th Cir.1986)
 
 
 [4]
 The court could hardly have entered any stronger findings given the record before him. Even Agent Schickedanz's summary of the supposedly exigent circumstances lacks the urgency required for the application of the exception:
 I felt that Mr. Wicks would be departing; that he might be in an attempt to destroy evidence; that he might flee from the area; that if he got out on the highway, we would not be able to make a safe car stop of him; and that it would have been easier, and it was easier, to arrest him in the motel room.
 Vol. III at 34-35 (emphasis added).